Ida L. BLAKE, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. No. 80–74622.**

United States District Court, E. D. Michigan, S. D.

Dec. 16, 1981.

Bruce L. Jerris, Levine & Benjamin, P. C., Detroit, Mich., for plaintiff.

Leonard R. Gilman, U.S. Atty., Hayward L. Draper, Asst. U.S. Atty., Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

COHN, District Judge.

### I.

This Social Security disability case is before the Court on plaintiff's objections to

the Magistrate's Report and Recommendation that summary judgment be granted in favor of defendant Secretary. 28 U.S.C. § 636(b)(1).

Plaintiff filed an application for disability benefits in January 1979 alleging a disability commencing March 1, 1975; at the administrative hearing she changed her disability onset date to January 23, 1978 to avoid possible overlap with an earlier claim denial. After her application was administratively denied initially and on reconsideration, she requested a *de novo* hearing which was held before an administrative law judge (ALJ) on July 17, 1980. The ALJ held that plaintiff had not been under a disability at any time on or before the date of his decision. The Appeals Council affirmed on November 17, 1980 and this action followed. 42 U.S.C. § 405(g).

### A.

Plaintiff was born January 30, 1919 and has a fifth grade education. Her work history consists of inspection and assembly work from 1953 to 1975 in an automobile plant; only the past fifteen years are considered relevant to this eligibility determination. 20 C.F.R. § 404.1565 (1981). From 1964–1967 plaintiff's job consisted of examining partially assembled car frames as they passed on the assembly line to check if the shocks and springs were properly fastened. She marked frames with nuts or washers loose or missing. She was not responsible for correcting the problems she marked, nor did she use any tools on the job. (Tr. 52–54).

From 1967–1975 plaintiff inspected cars at the end of the assembly line. Her job was to get into the assembled car and turn on the headlights, interior lights, radio, blower fan, and push the horn. If any of these items did not work she circled an appropriate symbol on a card and left it in the car. As in her prior job, she made no repairs herself and used no tools. (Tr. 55–58). Plaintiff took an early retirement in 1975 because, according to her testimony, her back problems made it impossible for her to get in and out of a car and thus precluded her continued employment as an inspector. (Tr. 52).

### B.

The ALJ concluded, after hearing the testimony of plaintiff and a vocational expert and reviewing the medical evidence of record, that plaintiff suffered from degenerative arthritis of the lumbosacral and cervical spine and nephrolithiasis with recurrent kidney infections. These impairments prevent her from performing work requiring heavy lifting, prolonged standing and walking, and repetitive bending, stooping, squatting and kneeling, thus disabling her from her former work as a car inspector. However, the ALJ found plaintiff capable of at least sedentary work and possessed of transferable skills from her semi-skilled employment experience as an inspector. Applying the medical-vocational guidelines set forth at 20 C.F.R. Subpart P, Appendix 2, Table 1, the ALJ determined that plaintiff, although a person of advanced age and limited education, was capable of sedentary work and possessed of transferable skills and therefore was not disabled.

### II.

Plaintiff first objects to the Magistrate's conclusion that the finding plaintiff could do sedentary work was supported by substantial evidence. She points to the report of Dr. MacNeil, an orthopedic surgeon. She claims that the ALJ ignored MacNeil's findings which were favorable to her in favor of the report of Dr. Juliar, an internist.

The statute requires the Court to accept the ALJ's factual findings as conclusive if supported by substantial evidence. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Dr. Juliar reported after examining plaintiff in April 1980 that although she suffered from chronic degenerative arthritic disease she was "certainly" capable of sedentary work not involving much bending, pulling or stooping. (Tr.

209). Dr. MacNeil's report is not to the contrary; he also noted "a serious impairment in her spine" but ventured no opinion as to her ability to work. (Tr. 202). A 1976 report by Dr. Maitra concluded that plaintiff's degenerative disc disease was only minor and she had no impairment of function. (Tr. 139–140). Plaintiff's family physician, Dr. Silvani, according to two very cursory letters dated 1975 and 1977 (Tr. 136, 155), advised her to stop working in 1975 because of her arthritis. However, a disability determination form filled out by Dr. Silvani in March 1979 only indicated an inability to stand, stoop, or bend for prolonged periods. (Tr. 197).

The Magistrate properly concluded that substantial evidence supported the ALJ's finding that plaintiff retained the ability to do sedentary work.

### III.

### A.

■ Plaintiff also objects to the findings that she is semi-skilled and has transferable skills. Because the ALJ determined that plaintiff was disabled from doing her former work, the burden shifted to the Secretary to show that there is work in the national economy which plaintiff can perform. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). Where an individual's claimed disability consists entirely of limited functional capacity caused by a severe, medically determinable impairment, as is

the case here, the Secretary sustains his burden by taking administrative notice of the existence of jobs in relation to functional capacity, age, education, and prior work experience. Application of these factors through a table or "grid" dictates a determination of disabled or not disabled.[1] Plaintiff argues that the ALJ in applying the table incorrectly classified her prior work experience as semi-skilled and as imparting transferable skills.

### B.

■ The vocational expert testified that plaintiff's work as a car inspector was semi-skilled because it required the use of judgment. (Tr. 88). The Magistrate noted that the regulations give as an example of semi-skilled work: "inspecting, testing or otherwise looking for irregularities".[2] The Court agrees that the ALJ's finding that plaintiff's prior work was semi-skilled is supported by substantial evidence.

### C.

The Magistrate, however, failed to address the issue of whether plaintiff's prior work gave her transferable skills. Under the medical-vocational guidelines, a person limited to sedentary work, of advanced age[3] and limited education or less[4] is considered disabled even if prior work experience is semi-skilled if no transferable skills exist.[5] The vocational expert testified that plaintiff's primary transferable work skill was "good visual acuity" and that other

1. "The Dictionary of Occupational Titles includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy. Appendix 2 provides rules using this data reflecting major functional and vocational patterns. We apply these rules in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work ... if the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled". 20 C.F.R. § 404.1569 (1981).

2. "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing

or otherwise looking for irregularities ...." 20 C.F.R. § 404.1568(b) (1981).

3. "Advanced age" is defined as 55 or over. 20 C.F.R. § 404.1563(d) (1981). Plaintiff was 61 years old as of March 31, 1980, the date her insured status expired.

4. Absent other evidence to the contrary, numerical grade level is used to determine educational abilities. Formal schooling at a 6th grade level or less is considered "marginal education"; 7th through 11th grade education is considered "limited". 20 C.F.R. § 404.1564(b) (1981). Plaintiff has a fifth grade education.

5. TABLE NO. 1—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINABLE IMPAIRMENT(S)

transferable skills were "good general intelligence, good hand-eye-foot coordination, good manual dexterity". (Tr. 88).

On cross-examination, plaintiff's counsel asked the expert if the "skills" he had described were in fact merely aptitudes. The expert conceded that what he had described were aptitudes but maintained that the words "skill" and "aptitude" were synonymous.

"I've indicated in my opinion the terms aptitudes and skills are synonymous and that an individual who functions as an inspector, in order to function in those jobs and perform them, one has to have a certain level of intelligence, manual dexterity, visual acuity and I've described those as transferable work skills."

(Tr. 96).

■ The vocational expert blurred an important difference between "skill" and "aptitude". Webster defines "skill" as the "*learned* power of *doing* something competently: a *developed* or *acquired* aptitude or ability".[6] A skill, unlike a simple aptitude, is acquired and relates to doing a specific act. Although the regulations never explicitly define either skill or aptitude, this distinction is implicit. The regulations repeatedly assume that skills are acquired.[7] Skills relates to specific "vocationally significant work activities",[8] while aptitudes involve only "basic work activities . . . necessary to do most jobs".[9]

The requirements that a skill relate to specific work activities and be acquired were satisfied in *Kurkowski v. Secretary of Health and Human Services*, No. 80–72398 (E.D.Mich. May 26, 1981), where this Court found that making assignments, coordinating activities and training employees were transferable skills acquired from work as a

| Rule | Age | Education | Previous Work Experience | Decision |
|---|---|---|---|---|
| 201.01 | Advanced Age | Limited or Less | Unskilled or None | Disabled |
| 201.02 | Advanced Age | Limited or Less | Skilled or Semi-Skilled — Skills Not Transferable | Disabled |
| 201.03 | Advanced Age | Limited or Less | Skilled or Semi-Skilled — Skills Transferable | Not Disabled. |

20 C.F.R. Subpart P, Appendix 2, Table No. 1 (1981).

**6.** Webster's Third New International Dictionary (1964) (emphasis added). The vocational expert, admitting that there is no special definition of "skill" in the rehabilitation field, claimed to apply Webster's definition (Tr. 93), a claim belied by his conclusion that skill and aptitude are synonymous.

**7.** "Work experience means skills and abilities you have *acquired* through work you have done which show the type of work you may be expected to do". 20 C.F.R. § 404.1565(a) (1981). "The *acquisition* of work skills demonstrates the ability to perform work at the level of complexity demonstrated by the skill level attained". 20 C.F.R. Subpart P, Appendix 2, Rule 201.00(e) (1981).

**8.** "We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs". 20 C.F.R. § 404.1568(d)(1) (1981).

**9.** "When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
2. Capacities for seeing, hearing, and speaking;
3. Understanding, carrying out, and remembering simple instructions;
4. Use of judgment;
5. Responding appropriately to supervision, co-workers and usual work situations; and
6. Dealing with changes in a routine work setting."
20 C.F.R. § 404.1521(b) (1981). The "skills" listed by the vocational expert parallel closely these examples of "basic" aptitudes.

delivery supervisor. *Cf. Holcomb v. Harris,* No. 80–74621 (E.D.Mich. October 13, 1981) (prior experience in operating molding machine, welding, burring and spray painting demonstrated skills in working with machines and materials); *Pettway v. Secretary of Health and Human Services,* No. 79–70238 (E.D.Mich. June 27, 1980) (experience as machine operator imparted skills of gross and fine manipulation).[10]

The vocational expert testified in general terms that a person who performs inspection work needs visual acuity and intelligence, but failed to identify these basic aptitudes with specific "vocationally significant work activities" relating either to plaintiff's past or potential future employment. (Tr. 95).[11] Although stating · that aptitudes become skills "as a result of the practice that an individual applies to specific jobs" (Tr. 95), he did not claim, nor could he have, that plaintiff's eyesight and intellect were acquired, or even enhanced, by her specific work experience.

Hand-eye-foot coordination and manual dexterity might be considered skills if acquired from work activity requiring rapid, repetitive or fine manipulation. 20 C.F.R.

**10.** Judge Guy in *Holcomb,* although rejecting an argument that transferable skills must have been acquired in the immediately prior work experience, still assumed that skills must be "gained" from some kind of experience. Slip Op. at 10. Likewise, Judge Pratt in *Pettway* distinguished *Day v. Califano,* Unempl.Ins.Rep. (CCH) ¶ 16,646 (S.D.Ohio 1979) as a case where the alleged "skills" were the "lowest common denominators and had not been enhanced by ... prior work"; hence, the *Day* plaintiff had "in effect, acquired no skills". Slip Op. at 6, 7 n. 4.

**11.** Explanatory information published with the Notice of Proposed Rule Making for the current regulations noted that "job titles in themselves are not reliable determinants of skills and ... evidence relating to an individual's job duties must be used in reaching ... conclusions". 43 Fed.Reg. 9299 (March 7, 1978).

**12.** "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks".

**13.** "The adversity of functional restrictions to sedentary work at advanced age (55 and over) for individuals with no relevant past work or

§ 404.1568(b) (1981).[12] *See Holcomb, supra; Pettway, supra.* However, here the evidence showed that plaintiff simply marked frames with a piece of chalk in the first job and pushed or pulled knobs and buttons in the second. (Tr. 53–58).

Under the regulations, a person restricted to sedentary work and handicapped by the adversities of advanced age and limited education is presumed disabled unless these limitations are compensated by the "substantial vocational asset" of transferable work skills.[13] This presumption would be effectively negated if such basic aptitudes as the ability to see, think and uses ones hands, common to most persons, are considered transferable skills. Plaintiff's prior work experience has conferred no "substantial vocational asset" to overcome her vocational limitations due to age, limited education and medical impairments; the medical vocational guidelines dictate a finding of disability.[14]

### D.

A further reason for finding plaintiff disabled is provided by 20 C.F.R. § 404.1563(d) (1981) which states in relevant part:

who can no longer perform vocationally relevant past work and have no transferable skills, warrants a finding of disability in the absence of the rare situation where the individual has recently completed education which provides a basis for direct entry into skilled sedentary work". 20 C.F.R. Subpart P, Appendix 2, Rule 201.00(d) (1981). Information published with issuance of this rule in final form explains:

"In the regulations, previous experience, particularly if it resulted in work skills that are transferable to other jobs, is treated as a substantial vocational asset in accordance with sources which reflect that workers with skills tend to have fewer and shorter periods of unemployment, and that skilled workers are often in demand even at age levels when some workers without acquired skills are experiencing difficulty in the labor market." 43 Fed.Reg. 55355 (November 28, 1978).

**14.** If the medical vocational guidelines are applicable, testimony by a vocational expert that there are in fact jobs available in a particular case is not relevant. *Vega v. Harris,* 636 F.2d 900, 904 (2d Cir. 1981).

"If you are close to retirement age (60–64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are highly marketable".

Plaintiff was 60 or older during the twelve month period preceding termination of her insured status on March 31, 1980. Her visual acuity, general intelligence, hand-eye-foot coordination and manual dexterity, even if considered skills, are hardly "highly marketable".[15]

### IV.

Accordingly, for the reasons herein stated, the Magistrate's recommendation will not be followed. Plaintiff's motion for summary judgment is GRANTED; defendant's motion for summary judgment is DENIED.

SO ORDERED.*

15. This provision, added when the regulations were amended effective August 20, 1980, 55 Fed.Reg. 55566, 55591, appears to interpret Rule 202.00(f):
"For a finding of transferability of skills to light work for individuals of advanced age who are closely approaching retirement (age 60–64), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."
20 C.F.R. Subpart P, Appendix 2 (1981). This rule applies to sedentary work since light work includes the functional capacity to perform sedentary work. Rule 202.00(a).
Judge Guy of this District has held that minimal vocational adjustment is a prerequisite to transferability of skills to sedentary work only if skills are to be transferred to *skilled* sedentary work. *Brown v. Secretary of Health and Human Services*, Unempl.Ins.Rep. (CCH) ¶ 17,-025 (E.D.Mich.1980). However, the rule under consideration in *Brown* was Rule 201.00(f):
"In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."
20 C.F.R. Subpart P, Appendix 2 (1981). Because plaintiff fits the category "closely approaching retirement age", she is entitled to the more generous provisions of Rule 202.00(f), which does not limit its application to transfer of skills to skilled work only.

* After this opinion was written, the Court received in chambers a special issue of the law reporter published by the Office of Hearings and Appeals of the Social Security Administration, devoted to the application and interpretation of the medical-vocational guidelines. 5 OHA Law Reporter No. 4 (October 1981). A number of unpublished decisions on the transferability of skills were reported. *See, e.g., Barczyk v. Secretary of Health, Education and Welfare*, No. 79–74217 (E.D.Mich. May 12, 1980) (Joiner, J.). The Court finds nothing in these decisions to require reconsideration of the reasoning and conclusion reached in this case.