James D. WEAVER, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 82–1505.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1983.

Decided Dec. 7, 1983.

William M. Crawforth (argued), Stalburg, Bean, Laritz & Fischel, Detroit, Mich., for plaintiff-appellant.

Leonard R. Gilman, U.S. Atty., Geneva S. Halliday, Asst. U.S. Atty. (argued), Detroit, Mich., for defendant-appellee.

Before JONES and WELLFORD, Circuit Judges, and ALLEN, District Judge *.

ALLEN, District Judge.

James D. Weaver appeals the denial of his application for Social Security disability benefits. The Secretary denied Weaver's application for disability benefits and the

---

* The Honorable Charles M. Allen, Chief United States District Judge for the Western District    of Kentucky, sitting by designation.

District Court affirmed the Secretary's decision, overruling the recommendations of the United States Magistrate. Weaver raises several arguments on appeal, including the argument that the Secretary erroneously found that his work skills were "transferable" under the "grid," Rule 201.-03, Table 1 of Appendix 2, Subpart P, Regulation 4. After due consideration, we agree that the Secretary's decision is not supported by substantial evidence and that the Secretary failed to apply the correct section of the "grid."

A series of injuries left Weaver with a condition requiring "a total laminectomy at the L4–L5 level." Tr. at 86. A laminectomy is an "excision of the posterior arch of a vertebra." *Dorlands Illustrated Medical Dictionary* at 84 (25th Ed.1974). After a period of rehabilitation, Weaver attempted to return to work but was unable to remain on the job. His inability to return to his former employment is undisputed.

Weaver was employed as a mechanic on boxmaking machines. His work involved the use of "cutting torches, welders, pipe threading machines, grinders, drills and drill presses, saws, torches, arc welders, pipe wrenches, various other wrenches, screw drivers, hammers, chain falls, jacks (hydraulics), fork lifts and lifting machines [on occasion]." Tr. at 60, 94. A vocational expert found that Weaver's skills were transferable to such jobs as "inspection, bench assembly and repair, and processing (machine inspection). The jobs would be found in the related automobile industry, plastics industry, and electronic industry. Adjustment would be minimal in view of the light machine repair he was assigned in 1/3/77." Tr. at 137. We note in passing that although the job described is mentioned in the transcript at pp. 101 and 104, we find no evidence of what skills this "light machine repair" job required; and the expert does not disclose where he learned that Weaver possessed such skills.

The vocational expert appears to have relied on Weaver's work history as given in his disability application, Tr. 101–04, for his analysis. Tr. at 135–37. The vocational expert lists a number of job-related skills which he considers transferable. Those skills are "average intelligence, high average space relations, average form relations, above average finger dexterity, and manual dexterity in terms of the tools he used." Tr. at 136. The expert then found the jobs listed above as prospective jobs for Weaver.

Transferability of skills is the subject of 20 C.F.R. Subpart P, Appendix 2, Sec. 201.-00(f). "In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." The Administrative Law Judge (ALJ) found that Weaver was capable of doing sedentary work and that he was over 55, but made absolutely no reference to whether his skills were transferable to another prospective position. Instead, the ALJ appeared to rely on the vocational expert's finding that Weaver's skills as a mechanic were transferable to the new jobs envisioned by the vocational expert.

The only case discussing transferability of skills under 201.00(f) is *Blake v. Secretary,* 528 F.Supp. 881 (E.D.Mich.1981). The *Blake* court held that although "[h]and-eye-foot coordination and manual dexterity might be considered skills if acquired from work activity requiring rapid, repetitive or fine manipulation ..., [p]laintiff's prior work experience [pulling and pushing knobs and buttons] has conferred no 'substantial vocational asset' to overcome the vocational limitations due to her age, limited education and medical impairments...." 528 F.Supp. at 886.

Initially, *Blake* stands for the proposition that there is an inherent difference between "aptitudes" and "skills." An "aptitude" is an "inclination, a natural ability, talent, or capacity for learning." A "skill" is a "learned power for doing something competently." *Webster's Ninth New Collegiate Dictionary.* In short, an aptitude is an innate ability while a skill is a learned ability. Compare 20 C.F.R. 404.1521(b) with 20 C.F.R. 404.1565 and 404.1568.

While a person may have natural talents including dexterity, general coordination, space relations, etc., that same person may not have the particular learned ability to do a specific job. In this case, the vocational expert dealt with Weaver's "aptitudes" rather than with Weaver's "skills."

■ Furthermore, *Blake* stands for the proposition that a person who fits into this category on the "grid" is presumed disabled unless they have a particularly transferable skill, or "vocational asset." We find this presumption defensible. At an advanced age, a person has little time to learn a new skill and apply it to a new job, especially if that person is restricted to sedentary work by a medical disability. Rule 201.00(f) requires the Secretary to show that the disabled person has skills which are directly transferable in order to overcome the presumption. Here, neither the ALJ nor the vocational expert made any showing that Weaver needed "very little, if any, vocational adjustment . . . ." Rather, the ALJ adopted the vocational expert's findings which confused aptitudes and skills. We agree that the "presumption would be effectively negated if such basic aptitudes as the ability to see, think and uses ones [sic] hands, common to most persons, are considered transferable skills." 528 F.Supp. at 886. Therefore, we reverse.

■ Additionally, we find that the ALJ did not deal correctly with the issue of pain. The ALJ discounted Weaver's complaints of pain, as we read the ALJ's opinion, solely on the basis of his own observation of Weaver at the hearing. While we recognize that observation and credibility are factors in this complicated equation, and as such are material, relevant, and admissible, we cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited "sit and squirm" test. We do not imply that there was no evidence in the record from which the ALJ could not draw the inference of a lack of pain. However, the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation.

The decision is reversed and remanded to the District Court for an award of benefits.

WELLFORD, Circuit Judge, dissenting.

I respectfully dissent. The Administrative Law Judge issued a three page evaluation of the evidence and ten specific findings in this case, concluding that Weaver was entitled to a closed period of disability ending June 30, 1981, but that no new period thereafter had been established. There is no dispute that plaintiff experienced a laminectomy in January of 1980; that he worked for about nine weeks in 1981 after recovery from the immediate effects of this operation; and that he was unable to continue to do the heavy work associated with his shop mechanic work after March of 1981. The ALJ made the following evaluation of Weaver's assertion that pain prevented him from continuing to engage in any gainful employment:

The only other element which may affect this claimant's ability to engage in some work activity is the allegations of pain. While it is recognized that pain of a severe and persistent nature can be in and of itself disabling, it must be also established that because it is a symptom rather than a medically determinable impairment subject to precise diagnostic measurement, that there is a high level of subjectivity in stating the degree to which it exists. The preponderance of the evidence in this case does not show that claimant presently has pain which is of the degree that would preclude all work activity. There is no question that claimant experienced back pain however after the recovery from the surgery claimant made two attempts to return to the strenuous work that he previously did. This caused him to experience discomfort, according to him, that caused him to stop. However, his present level of activity which is similar to sedentary work activity does not elicit pain to the degree experienced when trying to do the mechanic job. This conclusion is rein-

forced by claimant's action at the hearing. Mr. Weaver was observed to walk to and from the hearing room without any show of discomfort on movement; he stood and turned to show the undersigned where he experiences the pain and walked to where the undersigned was seated with his medication all without effort or visual display of discomfort.

The ALJ did, I believe, a thorough job of examining the full record and giving full consideration to Weaver's claim of disabling pain. It was not a "sit and squirm" analysis, so often criticized by claimants' counsel in this court.

Furthermore, Dr. Rosenblatt, the physician who performed the laminectomy in March of 1980, remarked that Weaver was then "doing relatively well, but has *some pain in the right hip primarily from the bone graft* donor site. The patient certainly will have over a year of *temporary* total disability until the subsequent spinal fusion heals and it probably would be better for him to have only *light work* if such is available" (emphasis added). The record reflects no prescriptions being taken by Weaver for pain after October of 1980. Later, Dr. Rosenblatt's evaluation of disability was equivocal and based on what Weaver felt about performance of "his usual functions" as a shop mechanic. An April, 1981 physical capacities evaluation by a physician [1] indicates that Weaver could sit 3–4 hours at a time, stand 3 hours at a time, walk 2 hours at a time, and frequently lift or carry 6–10 pounds (occasionally 11–20 pounds) and could use both hands for repetitive movements and both feet for pushing and pulling of leg controls. In addition, he could occasionally bend and squat with only a "mild" restriction to being around moving machinery, none to being exposed to dust, fumes and gases.

1. The name of the physician is unclear in the record. (App. 130).

2. I find, *Blake v. Secretary,* 528 F.Supp. 881 (E.D.Mich.1981) inapplicable to these facts; nor does it in my view establish that 20 C.F.R. Subpart P, App. 2, 201.00(f) contains a pre-

I cannot agree that the vocational expert's testimony in his record does not support a conclusion that Weaver's mechanical skills are transferable to some type of sedentary work as found by the ALJ and, at least inferentially, by the district judge.[2]

sumption that skills are not transferable in sedentary work for a person of Weaver's age (the plaintiff in *Blake* was 60 years old or older; the court held that the vocation expert confused general "aptitude" with "skills" in considering whether the latter was transferable).