Robert THORNTON, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 81 Civ. 1369.

United States District Court, E.D. New York.

May 28, 1985.

**1186**

William J. Eppig, West Islip, N.Y., for plaintiff.

Anne E. Stanley, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This challenge to the defendant Secretary's denial of plaintiff's claim for disability insurance benefits is before me for the second time, following a remand to the Secretary. At this juncture the parties have cross-moved for judgment on the pleadings. For the reasons set forth below, plaintiff's motion is granted and defendant's motion is denied. This action is remanded to the Secretary for the sole purpose of calculating benefits due to the plaintiff.

*Background*

Plaintiff, who is now 60 years old and has a limited education, alleges disability due to a heart condition. On December 9, 1980, the Administrative Law Judge ("ALJ") rendered a decision that plaintiff was not entitled to receive benefits because he could perform his former work as the operator of a vacuum cleaner repair business. The decision of the ALJ became the final decision of the Secretary when it was affirmed by the Appeals Council on March 13, 1981.

Plaintiff thereafter timely commenced an action in the district court. In a Report and Recommendation dated May 4, 1983, Magistrate Chrein found that the medical evidence in the record supported the conclusion that plaintiff was severely impaired, but retained the residual functional capacity to perform sedentary work. However, the Magistrate recommended that this action be remanded to the ALJ for a determination of the exertional requirements of plaintiff's past work, which were not specified at all in the record originally before the ALJ.[1] By Memorandum and

---

**1.** The Magistrate alternatively recommended that the ALJ establish a basis for his conclusion that the plaintiff was currently working as a manager of the vacuum repair business. On

Order dated February 2, 1984, I accepted the Magistrate's Report and Recommendation in its entirety, notwithstanding the timely objection of the plaintiff.

At the hearing on remand on June 20, 1984, the ALJ received testimony from the plaintiff and from David Vandergoot, a vocational expert ("VE"). The ALJ accepted the VE's conclusion that the plaintiff's past work was heavy and skilled [2] in nature, Tr. 152, and the ALJ thus concluded that plaintiff could not return to his former work. Tr. 130. However, the ALJ went on to complete the sequential analysis,[3] i.e., to determine whether plaintiff possessed the residual functional capacity to engage in any other form of substantial gainful activity. The ALJ found that plaintiff could perform the semi-skilled sedentary job of electrical inspector.

At this point it is relevant to note that in evaluating whether this plaintiff can perform any type of work, transferability of skills is the determinative factor. This requirement is dictated by the relevant medical-vocational guidelines ("the grid") promulgated by the Secretary which are set forth in the margin.[4] Section 201.00(f) accompanying the grid regulations further limits the Secretary's ability to determine that a claimant such as Mr. Thornton can perform substantial gainful activity. That section provides:

> In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there mut be *very little, if any, vocational adjustment* required in terms of *tools, work processes, work settings, or the industry.*

(emphasis added). *See infra* at 1188. With respect to these factors, VE Vandergoot testified at several points that this plaintiff would likely have *more than* "very little" vocational adjustment to the sedentary occupation of electrical inspec-

---

remand, the ALJ did not reconsider this matter and it was not presented by the parties on appeal.

2. The skills which the vocational expert considered plaintiff to have are: ability to use hand tools, run equipment, work with specifications, use precise measurements and apply arithmetic functions. Tr. 153.

3. In order to determine whether a claimant is entitled to receive disability insurance benefits, the Secretary must employ the sequential analysis set forth in 20 C.F.R. § 404.1520. Using that method of evaluation, the Secretary must determine in the following order: (1) whether the claimant is working; (2) if not, whether the claimant is severely impaired; (3) if so, whether the claimant has a "listed" impairment; (4) if not, whether the claimant can perform his past relevant work; and (5) if not, whether the claimant can perform any other type of work. The fifth step of the sequential analysis, which is the provision relevant to the case at bar, states:

> Your impairment must prevent you from doing any other work. (1) If you cannot do any work you have done in the past because you have a severe impairment, we will consider your residual functional capacity and your age, education and past work experience to see if you can do other work. If you cannot, we will find you disabled.

20 C.F.R. § 404.1520(f).

---

4. The relevant grid regulations are set forth in 20 C.F.R., Subpart P, Appendix 2, Table 1, which provides:

Table No. 1—Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 201.01 | Advanced age | Limited or less | Unskilled or none | Disabled |
| 201.02 | ...do ....... | ...do ......... | Skilled or semiskilled—skills not transferable | Do |
| 201.03 | ...do ....... | ...do ......... | Skilled or semiskilled—skills transferable | Not disabled |

(footnotes omitted) Application of the grid regulations has been upheld as constitutional by the Supreme Court in *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

tor. Specifically, the VE felt that plaintiff would require some adjustment with respect to two aspects of that position: (1) plaintiff would require approximately 30 days of training to adjust to the different types of products and different skills necessary for that job, and (2) plaintiff would experience more than very little psychological adjustment to (a) being an employee and co-worker, instead of an employer, (b) production and time requirements, and the inability to control his time and activities. Tr. 155, 156, 159, 161–2, 168, 169.[5] In the terms of § 201.00(f) *supra* note 3, the VE described the areas where plaintiff would need more than very little adjustment to be "industry" and "work settings."[6] Tr. 156, 168–69.

The ALJ received no other testimony or documentary evidence regarding the transferability of plaintiff's skills to the occupation of electrical inspector. However, he rejected the VE's opinion that plaintiff would require more than "very little" adjustment to such work within the meaning of § 201.00(f). The ALJ therefore concluded that plaintiff was not under a disability because he could perform that job.

Plaintiff asserts two bases for his appeal from the Secretary's denial of benefits on remand. First, he asserts that the abilities which the VE and ALJ determined him to have, *supra* note 3, are not "skills" but are merely "aptitudes;" thus, plaintiff urges, he cannot be found to have transferable skills. Second, plaintiff contends that even if his abilities are deemed to be skills, he should be found disabled under § 201.00(f) because he would require more than very little vocational adjustment within the meaning of that regulation.

*Discussion*

The only issue to be decided by this Court is whether the Secretary's determination that plaintiff is not disabled because he can perform sedentary, semi-skilled work as an electrical inspector is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is well settled that once a claimant has establisshed that he is severely impaired, the burden of proof shifts to the Secretary to demonstrate that there is other work which the plaintiff can perform. *Parker v. Harris*, 626 F.2d 225 (2d Cir.1980). I will address the two bases of plaintiff's argument *seriatim*.

### A. *Applicability of § 201.00(f)*

■ Although not raised by either party to this action, I must first address the applicability of § 201.00(f) to the plaintiff here. As indicated *supra* at 1187, that provision sets forth a standard for the determination of transferability of skills to *skilled* sedentary work. The position of electrical inspector, which the ALJ found that plaintiff could perform, is *semi*-skilled sedentary work. The courts have differed as to whether § 201.00(f) is applicable when the issue presented is whether the plaintiff's skills are transferable to other than "skilled" work. *Compare Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984) (discussion of applicability of § 201.00(f) to "other" sedentary work) *with Brown v. Secretary of Health & Human Services*, Unempl.Ins.Rep. (CCH) ¶ 17,025 (E.D.Mich. 1980) (cited in *Blake v. Secretary of Health & Human Services*, 528 F.Supp. 881, 887 n. 15 (E.D.Mich.1981)) (holding § 201.00(f) to be applicable only "if skills are to be transferred to *skilled* sedentary work").

In the instant case, however, the Secretary has applied § 201.00(f) to plaintiff Thornton at both the administrative level and before this Court. *See, e.g.,* Tr. 131;

---

**5.** Although counsel for the government urged at oral argument of the instant motion that the VE stated that plaintiff's psychological adjustment to this position would take 30 days, the record does not support this conclusion. The time period discussed by the VE referred to adjustment to the technical aspects of the position of electrical inspector.

**6.** Although the VE first vascillated with respect to categorizing plaintiff's anticipated psychological adjustment in terms of § 201.00(f), he eventually concluded that this problem would most likely fall within the "work settings" category. Tr. 168–69.

Defendant's Brief at 7. Because of this position and because the Secretary has apparently interpreted § 201.00(f) to apply to sedentary work generally,[7] I find that application of that regulation to plaintiff is appropriate in this case.

### B. *Skills vs. Aptitudes*

■ The scant legal authority interpreting § 201.00(f) for the most part addresses whether certain abilities are skills or aptitudes under that provision. *See, e.g., Ellington v. Secretary of Health & Human Services*, 738 F.2d 159 (6th Cir.1984) (capacity to exercise "independent judgment" not a transferable skill); *Richardson, supra* (abilities to maintain a production standard and to use hand tools not skills); *Weaver v. Secretary of Health & Human Services*, 722 F.2d 310 (6th Cir.1983) ("average intelligence, high average space relations, average form relations, above average finger dexterity, and manual dexterity in terms of the tools he used" held to be aptitudes and not transferable skills); *Pfalz v. Heckler*, 589 F.Supp. 653, 656 (S.D.Ohio 1984) (where ALJ made no finding as to transferability of plaintiff's skills and there was no evidence that plaintiff had a "particular learned ability" to perform a specific job, Secretary had not met burden of proving that plaintiff was not disabled); *Blake, supra*, 528 F.Supp. at 884–85 (good visual activity, general intelligence, hand-eye-foot coordination and manual dexterity held to be aptitudes and not skills).

Perhaps the most clear comparison between aptitudes and skills is that set forth in *Blake, supra:*

> Webster defines "skill" as the *"learned* power of *doing* something competently; a *developed* or *acquired* aptitude or ability." A skill, unlike a simple aptitude, is acquired and relates to ḋoing a specific act. Although the regulations never explicitly define either skill or aptitude, this distinction is implicit. The regulations repeatedly assume that skills are acquired. Skills relates [sic] to specific "vocationally significant work ̇activities," while aptitudes involve only "basic work activities . . . necessary to do most jobs."

528 F.Supp. at 885 (emphasis in original) (footnotes omitted). *Accord, Weaver, supra*, 722 F.2d at 311 ("an aptitude is an innate ability while a skill is a learned ability").[8]

---

**7.** This is apparent from Social Security Ruling 82–41, "Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979," *reprinted in* West's Social Security Reporting Service (Rulings) (1975–82) at 853–54, which states in relevant part:

> ■ c. Special provisions made for transferability. To find that an individual who is age 55 or over and is limited to sedentary work exertion *has skills transferable to sedentary occupations,* there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry. The same is true for individuals who are age 60 and older and are limited to light work exertion. Individuals with these adverse vocational profiles cannot be expected to make a vocational adjustment to substantial changes in work simply because skilled or semiskilled jobs can be identified which have some degree of skill similarity with their PRW [past relevant work]. In order to establish tranferability of skills for such individuals, the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation.

> Generally, where job skills are unique to a specific work process in a particular industry or work setting, e.g., carpenter in the construction industry, skills will not be found to be transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or industry. On the other hand, where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC.

**8.** The Secretary's definition of skills is found in SSR 82–41, *supra* note 7, at 847–56. The relevant portion of that ruling provides:

> 2. Skills, skill levels, and their potential for being transferred to other occupations.
> a. What a "skill" is. A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the

At the hearing on remand, plaintiff testified that his former activities as manager of his vacuum cleaner and sewing machine repair business included doing all of the repair work (mostly electrical), selling, preparing advertisements and keeping the books of the company. Tr. 141–46. Plaintiff also testified that prior to going into that business, he apprenticed for one and one half years in order to learn specifically how to repair vacuum cleaners and sewing machines. Tr. 141, 146. While not all of plaintiff's activities at his former work may be "skills" within the meaning of the Social Security Act and case law, I find that the extensive training and managerial and technical aspects of his work would be best characterized as skills and not aptitudes.

### C. "Very Little" Vocational Adjustment

■ As discussed *supra*, the uncontradicted opinion of VE Vandergoot was that the plaintiff here would require more than "very little" vocational adjustment to adapt to the position of electrical inspector. Although the ALJ disregarded the VE's assessment of the degree of plaintiff's adjustment under § 201.00(f), the rejection of that part of the VE's opinion is not based upon any other evidence considered by the ALJ. It is well settled that a vocational expert's opinion may be a reliable assessment of a claimant's ability to perform substantial gainful activity if his evaluation

is based upon substantial evidence present in the record. *See, e.g., Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983). The parties here do not dispute the evidence relied upon by VE Vandergoot, but do disagree with respect to Vandergoot's assessment of the transferability of plaintiff's skills under § 201.00(f). Where the uncontraverted testimony of the VE supports the conclusion that a claimant's skills are not transferable with the minimal degree of adjustment specified in § 201.-00(f), a finding of disability is appropriate. *See Piechucki v. Heckler*, 613 F.Supp. 45 at 47–48 (E.D.N.Y. March 28, 1985). The Secretary has clearly failed to meet her burden of proving that plaintiff possesses the residual functional capacity to perform substantial gainful activity.[9] *Parker v. Harris, supra.*

### Conclusion

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is granted and defendant's motion is denied. This case is remanded to the Secretary solely for the computation of benefits due to the plaintiff.

SO ORDERED.

carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Skills are not gained by doing unskilled jobs, and a person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs. The table rules in Appendix 2 are consistent with the provisions regarding skills because the same conclusion is directed

for individuals with an unskilled work background and for those with a skilled or semiskilled work background whose skills are not transferable. A person's acquired work skills may or may not be commensurate with his or her formal educational attainment.
*Id.* at 848–49.

**9.** While the Government might urge that a remand would be appropriate in order for the ALJ to receive further evidence that would establish that plaintiff's skills are transferable under § 201.00(f), I find that a remand would only cause delay and give the Secretary a "last chance" to meet the burden of proof which she has twice failed to meet. *See e.g., Parker v. Harris, supra.* Plaintiff filed this action in 1981 and has already been sent back to the administrative level once.