787 F.2d 588
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROBERT W. BOGEMA, Plaintiff-Appellant,
vs.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 85-1263
 United States Court of Appeals, Sixth Circuit.
 3/14/86
 
 AFFIRMED
 W.D.Mich.
 On Appeal from the United States District Court for the Western District of Michigan
 Before: KRUPANSKY and GUY, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff filed for social security disability benefits on July 28, 1982, claiming disability beginning in May, 1979, as a result of pain in his back and lower extremities. His application was denied initially and on reconsideration. On April 13, 1983, an administrative law judge (ALJ) found that plaintiff was not disabled. The ALJ's decision became the final decision of the Secretary when the Appeals Council denied review. On appeal to the district court, Judge Hillman upheld the Secretary's determination. We affirm.
 
 
 2
 Plaintiff was born on May 31, 1923, making him 59 years old at the time of the hearing. He is divorced and claims no dependents. Plaintiff had completed the eleventh grade in school. He served as a truck driver in the army. Plaintiff was employed as a bartender from 1971 until he was laid off from that position in 1979.
 
 The ALJ determined:
 
 3
 1. The claimant met the special earnings requirement of the Act in May 1979, the date that the claimant stated he became unable to work, and continues to meet them through the date of this decision.
 
 
 4
 2. The claimant has the following impairment: degenerative disc disease of the lumbar spine. His musculoskeletal impairments are severe, but are not attended by the clinical findings that meet or equal the requirements of the listings.
 
 
 5
 3. The claimant's allegations of debilitating, intractable pain are not credible.
 
 
 6
 4. The claimant has the residual functional capacity to perform work-related functions except for work involving lifting in excess of 20 pounds, frequent bending, or frequent reaching.
 
 
 7
 5. The claimant is unable to perform his past relevant work as a bartender.
 
 
 8
 6. The claimant has the residual functional capacity for at least light work as defined in Regulation 404.1567.
 
 
 9
 7. The claimant is 59 years old, which is defined as advanced age.
 
 
 10
 8. The claimant has a limited education.
 
 
 11
 9. The claimant has work skills, demonstrated in past work, which can be applied to meet the requirement of semi-skilled work functions of other work. Examples of such work are desk clerk, cashier, and order clerk.
 
 
 12
 10. Regulation 404.1569 and Rule 202.03, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that the claimant, considering his residual functional capacity, age, education, and work experience, is not disabled.
 
 
 13
 11. The claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision.
 
 
 14
 Plaintiff has challenged three of the ALJ's conclusions as not supported by substantial evidence.
 
 I.
 
 15
 Plaintiff maintains that there is not substantial evidence in support of the ALJ's finding that plaintiff possesses transferable job skills. The vocational expert testified that plaintiff's past work experience could be classified as light, semi-skilled work. He stated that plaintiff had transferable skills of working with people, handling money, purchasing, ordering and receiving stock, and handling difficult people.
 
 
 16
 Plaintiff contends that these are not bona fide job skills; rather, the vocational expert confused job skills with 'aptitudes.' Plaintiff submits that he knew how to handle money and work with people before becoming a bartender. Furthermore, because plaintiff's supervisory skills and knowledge of purchase orders do not combine knowledge with coordinated physical movements and do not constitute a learned mental discipline, they cannot be considered transferable skills.
 
 
 17
 In Ellington v. Secretary of Health and Human Services, 738 F.2d 159 (6th Cir. 1984), this court considered the meaning of 'transferable skills.' This same issue had been discussed in Blake v. Secretary of Health and Human Services, 528 F. Supp. 881 (E.D. Mich. 1981), where Judge Cohn stated:
 
 
 18
 The vocational expert blurred an important difference between 'skill' and 'aptitude'. Webster defines 'skill' as the 'learned power of doing something competently: a developed or acquired aptitude or ability'. A skill, unlike a simple aptitude, is acquired and relates to doing a specific act. Although the regulations never explicitly define either skill or aptitude, this distinction is implicit. The regulations repeatedly assume that skills are acquired. Skills relates to specific 'vocationally significant work activities', while aptitudes involve only 'basic work activities . . . necessary to do most jobs'.
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 The vocational expert testified in general terms that a person who performs inspection work needs visual acuity and intelligence, but failed to identify these basic aptitudes with specific 'vocationally significant work activities' relating either to plaintiff's past or potential future employment.
 
 
 22
 528 F. Supp. at 885-86 (footnotes omitted). In Ellington, the court relied on this distinction in ruling that 'independence of judgment' and 'responsibility for a work product' were too vague to constitute particular skills which were transferable. 738 F.2d at 161.
 
 
 23
 20 C.F.R. Sec. 404.1521(b) defines 'basic work activities:'
 
 
 24
 When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include----
 
 
 25
 1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
 
 
 26
 (2) Capacities for seeing, hearing, and speaking;
 
 
 27
 (3) Understanding, carrying out, and remembering simple instructions;
 
 
 28
 (4) Use of judgment;
 
 
 29
 (5) Responding appropriately to supervision, co-workers and usual work situations; and
 
 
 30
 (6) Dealing with changes in a routine work setting.
 
 
 31
 These, then, are the types of characteristics included within the meaning of 'aptitudes.' Skills, on the other hand, are addressed in 20 C.F.R. Sec. 404.1568(d)(1):
 
 
 32
 We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
 
 
 33
 Here, the vocational expert concluded that plaintiff's experience working with people, i.e., overseeing two or three waitresses' work, was a transferable skill. Plaintiff's experience in ordering supplies and receiving stock were transferable to positions as a desk clerk or order clerk. And plaintiff's experience in handling difficult or beligerent people in the bar was transferable to a position as a security guard, particularly in a public place like a bank. Thus, the vocational expert did not simply identify unlearned aptitudes. Rather, he identified acquired skills in plaintiff's past relevant work and applied them to specific occupational work activities. For instance, the expert, when referring to plaintiff's ability to handle money, was not simply suggesting that plaintiff knew the denominations of currency. Handling money must be considered in terms of plaintiff's position as a bartender, i.e., taking money, using a cash register, making change, cashing out, etc. Likewise, 'working with people' in this context consisted of plaintiff 'overseeing' the work of two or three waitresses. Although plaintiff attempted to belittle his responsibility, claiming he did not represent 'management', he testified that he made sure the waitresses 'did their jobs.' Overseeing the work of others to make sure they do their jobs over a period of years entails more than a simple 'aptitude' for 'responding appropriately to co-workers.' Nor can it be said that these are abilities common to most persons. Ellington, 738 F.2d at 161. Finally, there can be no doubt that purchasing supplies, monitoring stock, and supervising deliveries is more than an aptitude. Although plaintiff submits that these activities were not a significant part of his job, the fact remains that he was responsible for these functions for many years.
 
 
 34
 Because the vocational expert identified skills plaintiff acquired in his past relevant work and related those skills to work activities among different jobs, there was substantial evidence to support the ALJ's finding that plaintiff had transferable job skills.
 
 II.
 
 35
 Plaintiff next complains that there was not sufficient evidence to support the finding that plaintiff is able to perform light work. Light work is defined as:
 
 
 36
 [W]ork [that] involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.
 
 
 37
 20 C.F.R. Sec. 404.1567(b). Plaintiff maintains that he is unable to do extensive standing or walking required in the jobs suggested by the vocational expert. He relies on the report of Dr. Nyce indicating that plaintiff would have significant limitation with respect to walking, standing, stooping, kneeling, lifting, reaching, pushing, pulling, and sitting. He further contends that as a treating physician, Dr. Nyce's conclusions are entitled to great weight. Thus, plaintiff submits, since the vocational expert noted that there were no entry level sedentary jobs available to plaintiff, and plaintiff is unable to perform light work, a conclusion of disability is mandated.
 
 
 38
 The ALJ found that although clinical testing revealed a small defect at the L4-L5 region of the lumbar spine, the treating neurosurgeon, Dr. Koymen, reported that surgery was not anticipated. Furthermore, range of motion studies have remained essentially normal. Moreover, because plaintiff testified that he is able to care for his personal needs, drive a car, perform household chores, and shop, the ALJ concluded that plaintiff was able to perform light work.
 
 
 39
 In reaching this decision, the ALJ found that plaintiff's testimony regarding debilitating pain was not fully credible. This conclusion is entitled to significant weight, since the ALJ has the best opportunity to make this determination, and such a finding should not be lightly discarded. Beavers v. Califano, 577 F.2d 383, 387 (6th Cir. 1978).
 
 
 40
 This court finds substantial evidence to support the ALJ's finding that plaintiff could perform light work. Plaintiff underwent a myelogram in June, 1977, which revealed a small extradural defect in the lumbar sac on the left at L-5, S-1. There is no other medical evidence in the record concerning plaintiff's back condition until August, 1982. At that time, plaintiff was hospitalized for back pain and treated conservatively with pelvic traction, mobilization, short-wave diathermy, and exercises. The physical therapist noted that plaintiff's lumbar spinal range of motion was limited by a moderate amount of pain.
 
 
 41
 In September, 1982, plaintiff was admitted to the hospital for back pain and pain in the lower extremities. Dr. Koyman, plaintiff's treating neurosurgeon, reported that a myelogram showed a small multiple defect at L4-L5, worse on the left side, 'which is not as impressive as I would expect and that is why patient is being released from the hospital today.' On September 23, 1982, Dr. Koymen reported that plaintiff was not in acute pain and was able to walk on the tiptoes and on the heels without any difficulty. The myelogram report on that occasion noted that this defect was present on a previous myelogram of June 15, 1977, and that it had not changed significantly in appearance.
 
 
 42
 A computer tomography report, dated October 6, 1982, revealed no evidence of disc herniation and minimal facet joint osteoarthritis of a very mild degree. The final medical report, dated December 20, 1982, from Dr. Koymen, stated that plaintiff had no neurological deficit. Although the CT scan showed dengenerative changes and a small defect at L4-L5 and perhaps at L5-S1 on the left side, it was not considered to be surgical. Conservative treatment was suggested. Finally, as noted above, plaintiff is able to take care of his own personal needs, cook, shop, do household chores, and drive.
 
 
 43
 Although Dr. Nyce determined that plaintiff was limited in his physical movements, the court would note that his conclusions were just that--conclusory. As such, the ALJ was entitled to disregard them. King v. Secretary of Health and Human Services, 742 F.2d 968, 973 (6th Cir. 1984). The ALJ's decision that plaintiff could perform light work is supported by substantial evidence, and the ALJ was entitled to disregard plaintiff's allegations of debilitating pain to the extent that objective, diagnostic medical evidence did not support such a conclusion.
 
 III.
 
 44
 Plaintiff argues that there is not substantial evidence of the existence of a significant number of jobs that plaintiff is able to perform. Plaintiff also submits that the position of security guard is unskilled work which should not have been included in the number of jobs plaintiff could perform.
 
 
 45
 As to the latter point, the Secretary has correctly noted that under 20 C.F.R. Sec. 1568(b), 'tending or guarding equipment, property, materials or persons against loss, damage, or injury' is defined as semi-skilled work. Moreover, when the claimant's characteristics fit the grid pattern, expert testimony is unnecessary to show a significant number of jobs in the economy, as the grids take into account the availability of jobs. Heckler v. Campbell, 461 U.S. 458, 468 (1982); Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 530-31 (6th Cir. 1981).
 
 
 46
 Since we find, as did the district court, that there is substantial evidence to support the ALJ's decision, we affirm.