798 F.2d 1416
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jack D. SMITH, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 84-1464.
 United States Court of Appeals, Sixth Circuit.
 July 8, 1986.
 
 Before LIVELY, Chief Judge, and WELLFORD and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 The plaintiff appeals from judgment of the district court dismissing an action brought by the plaintiff pursuant to the Federal Tort Claims Act. The appeal was submitted to the court on the record and briefs, counsel having waived oral argument.
 
 
 2
 The plaintiff claimed that employees of a Veterans Administration hospital improperly diagnosed his condition and that as a result he suffered damages. The United States moved to dismiss on the ground that the action was untimely since it was not begun within six months after the date of mailing of a notice of final denial of the claim by the Veterans Administration as required by 28 U.S.C. Sec. 2401(b).
 
 
 3
 The record discloses that the district court considered fully the argument of the plaintiff that his request for reconsideration should be considered a "new claim" and thus, the action was timely because it was filed within six months after denial of the request for reconsideration. The district court held that a person cannot file additional claims with an agency arising out of the same injury which formed the basis of an earlier claim for the purpose of avoiding the requirement that a court action must be begun within six months after final denial by the agency. The court found that the plaintiff had a single cause of action arising out of his injury and that the assertion of a "new claim" related to the same injury did not extend the time for filing suit.
 
 
 4
 Upon consideration of the briefs and record on appeal, this court concludes that the district court did not err in its decision holding that this action was barred by failure to file it within the six-month statutory period. The judgment of the district court is affirmed for the reasons set forth in the Memorandum Opinion and Order entered by Judge Charles W. Joiner on May 31, 1984.
 
 
 5
 David A. NELSON, Circuit Judge, dissenting.
 
 
 6
 After a thorough canvass of the evidence in this case, the Administrative Law Judge concluded that appellant Bliss was not entitled to disability insurance benefits. The Appeals Council declined to review that decision, finding "no basis" for concluding that the ALJ's findings were unsupported by substantial evidence. The district court thereafter granted the Secretary's motion for summary judgment in an action challenging the ALJ's decision. The appellant thus comes before us with at least two and a half strikes against him.
 
 
 7
 Our review "is limited to determining whether there is substantial evidence on the record as a whole to support the findings." Richardson v. Secretary of Health and Human Services, 735 F.2d 962, 963 (6th Cir. 1984). Those findings "are not to be overturned unless there is no substantial evidence supporting such conclusions." Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). (Emphasis supplied.) Unable to agree with my brethren that there is "no" substantial evidence supporting the ALJ's findings here, I respectfully dissent.
 
 
 8
 The medical findings in this case were neither "compatible [with] nor corroborative of the degree of pain ... alleged by the claimant," and the ALJ may have been giving Mr. Bliss the benefit of a doubt when he found that although Mr. Bliss "felt able enough to take a recent Caribbean vacation," he did in fact suffer from an intermittent nerve root irritation of the lower back that had not been diagnosed by any treating physician. The ALJ found that although Mr. Bliss had a "severe impairment," the impairment would not preclude him from performing "light sedentary work activity." Neither of those findings is challenged. We are asked only to decide whether there was substantial evidence to support the ALJ's finding, under the "Medical-Vocational Guidelines" set forth in Appendix 2 of 20 C.F.R. Part 404, Subpart P, that Mr, Bliss was not disabled because he had skills that were transferable to sedentary work.
 
 
 9
 Rule 201.07 in Table No. I of the Appendix, read in the light of Sec. 200.00 of the Guidelines, "directs" a conclusion that an individual with Mr. Bliss's medical and vocational profile "is not disabled" if his previous work experience is of the skilled or semi-skilled variety and his skills are "transferable." In order for such transferability of skills to be found, Sec. 201.00(f) tells us "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." Section 201.00(c) of the Guidelines says that "[v]ocational adjustment to sedentary work may be expected where the individual has special skills or experience relevant to sedentary work ...." (Emphasis supplied.)
 
 
 10
 The "special skills" of one of who, like Mr. Bliss, has served a four year apprenticeship as an electrician and who, as Mr. Bliss testified he had done, has performed "all types" of electrical work as a journeyman electrician might seem "relevant to sedentary work" even without expert testimony to that effect. But although "expert testimony is not required" under the guidelines (Kirk v. Secretary of Health and Human Services, supra, 667 F.2d at 529), such testimony was presented here: Dr. Asa Brown, a vocational expert, did testify, explicitly and without contradiction, that Mr. Bliss possessed skills that were transferable to sedentary assembly work, sedentary processing work, and sedentary repair work in the electrical field.
 
 
 11
 Dr. Brown's qualifications as a vocational expert--to which Mr. Bliss's attorney stipulated--do not seem to have been matched by his qualifications as a public speaker. The court reporter may have had some difficulty in catching the drift of Dr. Brown's testimony, but the ALJ, (who, unlike the members of this court, was able to hear Dr . Brown's testimony live) appears to have been able to capture the substance of what Dr. Brown said. The ALJ understood Dr. Brown to say that Mr. Bliss's skills
 
 
 12
 "include ability to read blueprints, layouts, understand instructions and the knowledge theory of electricity. He is also familiar with all the tools and gauges needed in this type of work. The skills are transferable to assembly, processing and repairman, all of which exist in the electrical industry .... [The skills] are also transferable to some appliance repair, assembly work ...."
 
 
 13
 The transcript also suggests that Mr. Bliss was not only knowledgeable about the theory of electricity, and was not only skilled in using both simple and sophisticated tools and instruments and in reading blueprints and layouts, but also was skilled in ordering materials in writing and through "verbal instructions."
 
 
 14
 After Dr. Brown had completed his attempt to describe the special skills Mr. Bliss possessed, the record reflects this exchange:
 
 
 15
 "Q Okay. Are the skills transferable?
 
 
 16
 A They are transferable to assembly work, processing work, repair work.
 
 
 17
 Q In the electrical field?
 
 
 18
 A Right.
 
 
 19
 Q Okay. And are the--is the work that is transferable, does it include sedentary and light work? A Yes."
 
 
 20
 Under modern practice, expert witnesses are not necessarily required to disclose the facts underlying their opinions unless asked to do so on cross-examination. (See Rule 705, Federal Rules of Evidence.) In expressing the opinion that Mr. Bliss's skills were transferable, Dr. Brown did not specifically state that a transfer would involve "very little, if any, vocational adjustment ... ." When the time came for Mr. Bliss's counsel to cross-examine Dr. Brown, he elected not to ask any questions at all.
 
 
 21
 The ALJ did not, in his decision, specifically discuss the degree of "vocational adjustment" that would be involved in a transfer to sedentary work. If the ALJ was familiar with the medical-vocational guidelines in Appendix 2, however, he knew that he could not find Mr . Bliss's skills transferable if more than a "very little" vocational
 
 
 22
 The source of our learning on the "skill-aptitude" dichotomy is Blake v. Secretary of Health and Human Services, 528 F.Supp. 881 (E.D. Mich. 1981). The claimant in that case had worked on an automobile assembly line inspecting cars. She made no repairs, and she used no tools. A vocational expert testified that because she had "good visual acuity . . . good general intelligence, good hand-eye-foot coordination, good manual dexterity," she had transferable "skills." The vocational expert conceded, on crossexamination, that he was talking about "aptitudes," but he indicated that "aptitudes and skills are synonymous." 528 F.Supp. at 885. The district court, disagreeing, held that aptitudes and skills are not synonymous. The holding in Blake has been approved by this court in Weaver v. Secretary of Health and Human Services, 722 F.2d at 311, where the "job-related skills" that a vocational expert considered transferable consisted of "average intelligence, high average space relations, average form relations, above average finger dexterity, and manual dexterity in terms of the tools he used"; Richardson v. Secretary of Health and Human Services, supra, 735 F.2d at 964, where "[t]he vocational expert merely testified that Richardson's transferable 'skills' consisted of the ability to maintain a production standard and the ability to use hand tools;" and Ellington v. Secretary of Health and Human Services, 738 F.2d 159 (6th Cir. 1984), where the question was "whether the capacity to exercise 'independent judgment' constitutes a 'transferrable [sic] skill' within the meaning of the grid."
 
 
 23
 As explained in Ellington, supra, the "skills" referred to in the grid in Appendix 2 are defined and treated "as specific and articulable abilities, which are learned." 738 F.2d at 160. (Emphasis supplied.) They "must be particular acquired characteristics," id., and they "are made equivalent to education" for the purposes of the grid. 738 F.2d at 161. "Such skills refer to learned abilities which combine knowledge with coordinated physical movements, such as operating a typewriter, or a learned mental discipline, or an area of expertise." Id. "Independence of judgment" and "responsibility for a work product," by way of contrast, "are too vague to constitute particular skills which are transferable." Id.
 
 
 24
 The particular skills which Mr, Bliss had acquired were not "too vague" to be transferable, in my opinion, and I do not think they were mere "aptitudes." Mr. Bliss may have had an aptitude for reading blueprints, but his skill in doing so was an acquired ability--learned, according to the evidence, "on his previous job." Mr. Bliss may have had an aptitude for layout, but his layout skills also were learned "on his previous job." Mr. Bliss may have had an aptitude for using tools and gauges, but his familiarity with the tools and gauges needed in electrical work was an acquired skill. Mr. Bliss may have had an aptitude for learning the theory of electricity, but the knowledge he possessed in that field was acquired, not inherent.
 
 
 25
 Because these are true skills, as I believe, and because I think the record establishes without contradiction that they were "transferable" within the precise meaning of that term as used in the regulations, I would affirm the judgment of the district court.