791 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HATTI JOHNSON, widow and successor, Plaintiff-Appellant,
vs.
MARGARET HECKLER, Secretary of Health and Human Services,
Defendant-Appellee.
 85-1441
 United States Court of Appeals, Sixth Circuit.
 4/18/86
 
 AFFIRMED
 W.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
 Before: ENGEL, KENNEDY and CONTIE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Hatti Johnson[1] appeals from the summary judgment of the district court, affirming the decision of the Secretary of Health and Human Services (Secretary) denying Charles Johnson's claim for disability insurance benefits. For the reasons that follow, we affirm the judgment of the district court.
 
 I.
 
 2
 Charles Johnson filed an application for disability benefits on June 9, 1980, alleging that he became unable to work on October 19, 1979, due to residuals of a broken ankle. Johnson had previously filed for, and received, benefits when he had broken his ankle on September 3, 1977. Those benefits were terminated as of March 1979, when Johnson was determined to be able to do substantial gainful work, based on medical reports showing that Johnson's fracture had healed. Johnson had returned to work in December 1978. Johnson's June 9, 1980, application for benefits was denied originally and uponreconsideration. On July 28, 1981, a hearing was held before an administrative law judge (ALJ), at which the following relevant evidence was adduced.
 
 
 3
 Johnson was born on May 29, 1921 and completed eight years of formal education. Johnson had been employed in an unskilled capacity as a shaker, janitor and stock mover. Johnson had been employed in a semi-skilled capacity as a crane driver, swing grinder and light checker. Johnson started the light checker job in December, 1978 and performed the job for approximately ten months. Johnson stopped working as a light checker in October, 1979, because the position was terminated. The only work performed by Johnson after termination of his light checker job was a job entitled Besly conveyor stocker. Johnson performed that job from April 28, 1980 to May 2, 1980, discontinuing his employment when he allegedly could not get out of bed the morning after his last day of work. Johnson did not work after May 2, 1980.
 
 
 4
 Johnson testified before the ALJ concerning his pain and limited movement. Johnson likened the pain in his ankle to having needles sticking in him all the time. He testified that he spent three to four hours a day lying down and elevating his foot. He also stated that he needed some form of assistance to walk, preferably a crutch. Johnson stated that he could only sit for two to three hours before his ankle would bother him with stiffness and pain and
 
 
 5
 On October 17, 1980, Dr. Richard Rotman examined Johnson, noting hypertension and status post fracture of the right ankle with persistent pain and reduced range of motion.
 
 
 6
 A vocational expert also testified at the ALJ hearing. The expert testified that only Johnson's employment as a light checker, which the expert classified as a semi-skilled job, gave Johnson transferable skills to sedentary occupations with a sit or stand option. The expert further testified that there were 11,000 semi-skilled jobs in Michigan that Johnson could perform if he was found capable of performing a sedentary job with a sit or stand option. The expert added, however, that if it was determined that Johnson could make very little, if any, vocational adjustment, the jobs would be reduced to 9,000. The jobs eliminated would be assembly-type positions.
 
 
 7
 Based on the above evidence, the ALJ concluded that Johnson had impairments of hypertension and post status fracture of the right ankle. The ALJ discounted Johnson's credibility, stating that Johnson had greatly exaggerated his pain and limitations. The ALJ determined that while Johnson's impairments prevented him from engaging in his former employment, they did not prevent him from engaging in 'substantial gainful activity.' The ALJ found that Johnson could perform semi-skilled sedentary work activities with a sit or stand option and that such jobs existed in significant numbers in Johnson's immediate region. Having concluded that Johnson suffered from no impairments which precluded gainful employment, the ALJ held that Johnson was not disabled as defined by the Social Security Act and accordingly denied benefits. This decision became the final decision of the Secretary on December 7, 1981, when the Appeals Council affirmed.
 
 
 8
 Johnson sought review by the district court and, after complete review of the record, the district court granted the Secretary's motion for summary judgment thereby dismissing Johnson's complaint. The district court found substantial evidence in the record to support the ALJ's decision.
 
 II.
 
 9
 The sole issue before this court is whether substantial evidence in the record supports the ALJ's findings. Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Richardson v. Perales, 402 U.S. 389, 401 (1971), citing Consolidated Edison v. NLRB, 305 U.S. 197,229 (1938). In making our determination of this question, we are to examine the evidence in the record 'taken as a whole.' Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).
 
 
 10
 A claimant must establish a disability as defined by 42 U.S.C. Sec. 423(d)(1)(A)[2] to qualify for disability insurance benefits. The Secretary has promulgated regulations to aid in determining whether a claimant is 'disabled.' As this court described in Kirk v. Secretary, 667 F.2d 524 (6th Cir. 1981), the regulations provide a five-step procedure. The initial inquiry is 'whether the claimant is currently engaged in substantial gainful activity; if so, the claimaint 'not disabled." Id. at 528. The second inquiry is whether the claimant has a severe impairment, 'if not, then on the medical evidence alone the claimant is determined to be not disabled.' Id. The third inquiry, to be made only if a severe impairment is found, involves comparing the impairment to those listed in 20 C.F.R. Subpart P, Appendix 1, to determine if the claimant is disabled based solely on the medical evidence. Id. If the claimaint is not found to be disabled, the procedure continues to a fourth inquiry, 'whether the claimant can perform relevant past work; if so, then the claimant is not disabled.' Id. The last inquiry concerns use of the medical-vocational guidelines, 20 C.F.R. Subpart P, Appendix 2, to determine whether, based on the claimant's age, education and transferable skills, 'the claimant is able to perform substantial gainful activity in the national economy.' Id. We also noted in Kirk that 'if the characteristics of the claimant do not identically match the description in the grid [medical-vocational guidelines], the grid is only used as a guide to the disability determination.' Id.
 
 
 11
 Substantial evidence in the record supports the ALJ's termination that Johnson: (1) was not engaged in substantial gainful activity; (2) had a severe impairment; (3) did not have an impairment sufficient to establish disability on the basis of medical evidence alone; and (4) was prevented from performing past relevant work. Accordingly, the essential inquiry was the last step in the sequence, determination of whether Johnson could perform substantial gainful activity in the national economy. Normally, the medical-vocational guidelines would be utilized to make this determination. However, the grid was inapplicable in this case. As we stated in Kirk, 'when a claimant does not precisely fit the grid's mold, the grid is inapplicable and the applicant is entitled to further individualized determination of the availability of work.' 667 F.2d at 540 n.8. Because Johnson could only work in a sedentary job with a sit or stand option, he did not fall into the grid classification of sedentary work and accordingly the grid could not provide a conclusive determination of disability. See Wages v. Secretary, 755 F.2d 495, 499 (6th Cir. 1985).
 
 
 12
 In this type of situation, vocational expert testimony is required to determine the availability of jobs which can be performed, based on the claimant's educational background, disabilities and work experience. See Kirk;, 667 F.2d at 540. The ALJ in this case properly had a vocational expert testify regarding jobs which Johnson could perform. The expert testified that, assuming Johnson could do little if any vocational adjustment, Johnson had transferable skills which qualified him for approximately 9,000 semi-skilled, sedentary, sit or stand option jobs in the State of Michigan. This testimony gave rise to the ALJ's conclusion that Johnson could perform substantial gainful activity in the national economy.
 
 
 13
 Johnson argues that the conclusions of the expert that Johnson had skills which were transferable are incorrect in light of Weaver v. Secretary, 722 F.2d 310 (6th Cir. 1983). Johnson observes that only the skills obtained in the light checker job were found to be transferable. Johnson contends first that the light checker job required only a general aptitude and did not impart any skills, and second, that at Johnson's advanced age, the ten-month period he worked the light checker job was too short of a time to develop transferable skills.
 
 
 14
 We are unpersuaded by these arguments. The regulations define semi-skilled work as:
 
 
 15
 work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing, or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.
 
 
 16
 20 C.F.R. Sec. 404.1568 (emphasis added). The vocational expert testified that the skills required in the light checker job included visual perception, dexterity, manipulative skills, and discrimination on a fast, alert basis. The light checker job was essentially an inspection job, in which the worker looked for irregularities in motor rings. This is precisely the type of job described by Sec. 404.1568 as semi-skilled. Accordingly, the expert could properly classify the light checker job as semi-skilled.
 
 
 17
 With respect to transferability of skills, 20 C.F.R. Subpart P, Appendix 2, Rule 201.00(f) provides: '[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 or over), there must little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.' The vocational expert in this case explicitly predicated his conclusion that numerous jobs existed which Johnson could perform on the assumption that those jobs would require 'little, if any, vocational adjustment.' Therefore, his findings of transferability were consistent with the regulations. Since the expert's opinions as to both skills and transferability were made in accordance with the regulations, we conclude there is substantial evidence in the record to support the ALJ's finding that Johnson could engage in substantial gainful activity.
 
 
 18
 Johnson raises another argument, that the pain caused by the ankle in and of itself, was disabling. The ALJ specifically noted that Johnson's allegations of pain were greatly exaggerated. We conclude that the ALJ properly evaluated Johnson's allegations of pain. While pain alone can be so severe that it is disabling, see Glass v. Secretary, 517 F.2d 224, 225 (6th Cir. 1975), determinations of credibility rest with the ALJ and 'the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly." Kirk, 667 F.2d at 538, quoting Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir. 1978). The ALJ's determination of credibility is supported by the medical reports, none of which described disabling pain. Accordingly, the determination cannot be disregarded and we find that Johnson's pain alone was not disabling.[3]
 
 
 19
 For the reasons set forth above, we find substantial evidence to support the ALJ's determination that Johnson was not disabled within the meaning of the Social Security Act and we accordingly AFFIRM the judgment of the district court.
 
 
 
 [1]
 On August 19, 1985, this court granted the appellant's motion to substitute Hatti Johnson, widow and successor to Charles Johnson, as party plaintiff
 
 
 [2]
 Section 423(d)(1)(A) defines disability as:
 Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
 
 
 [3]
 Because we conclude, based on the ALJ's determination of credibility, that Johnson's pain was not disabling, we need not address the Secretary's argument that section 3(a)(1) of the Social Security Benefits Reform Act of 1984 should be applied retroactively. Section 3(a)(1) amended 42 U.S.C. Sec. 423(d)(5) to provide that statements of pain must be supported by medical findings in order to establish disability