815 F.2d 75
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William BILBIE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1097.
 United States Court of Appeals, Sixth Circuit.
 Feb. 5, 1987.
 
 Before KRUPANSKY, NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant William Bilbie (Bilbie) appealed from the district court's order granting summary judgment in favor of the Secretary of Health and Human Services (the Secretary) in this action commenced to review the Secretary's denial of disability benefits.
 
 
 2
 The record disclosed the following facts. Bilbie was born on March 1, 1931 and resides in Ann Arbor, Michigan with his spouse. He has a high school education, and, after serving in the military, worked as a bricklayer for 34 years. He was laid off in October, 1982 because of a lack of work.
 
 
 3
 On November 29, 1982, Bilbie suffered a heart attack and since that time his right leg and foot have been numb, and he occasionally experiences chest pains and an upset stomach. His other medical problems date back to 1968 when he injured his back. He testified that he has attempted to tolerate the pain since his back injury, but that it has become increasingly severe with the passage of time. In 1981, he developed an ulcer and he also takes medication for diabetes.
 
 
 4
 After his heart attack, Bilbie was treated at a local hospital for a sub-endocardial myocardial infarction. He was discharged on December 10, 1982 because he had not re-experienced the chest pains which had prompted his hospitalization.
 
 
 5
 On February 14, 1983, Dr. Bruce Genovese (Genovese) submitted a report to Bilbie's treating physician, Dr. Rodolfo Argueta (Argueta), in which he concluded that Bilbie had coronary artery disease with one vessel obstruction. Bilbie was readmitted to the hospital for treatment for coronary artery disease on February 15, 1983. He was discharged on February 16, 1983 after Genovese concluded that Bilbie suffered from "arterolateral hypokinesis and a subtotal occluded large left circumflex coronary vessel. The result of his coronary vasculature appears to be intact." Genovese prescribed an exercise program for Bilbie and advised that he "could return to work as long as he does not have to do lifting over 50 pounds at a time."
 
 
 6
 On February 28, 1983 Argueta informed Bilbie that his hypertension and diabetes were under reasonably good control and that his main impediment was coronary artery disease. He suggested that Bilbie not return to his job as a bricklayer, but instead seek a job which did not involve as much physical exercise.
 
 
 7
 On March 22, 1983, Dr. Saeed Farhat (Farhat) submitted a report to Argueta in which he concluded that Bilbie's back pain suggested a herniated disc. Bilbie had a fairly good range of back motion, no right Achilles reflex, some sensory diminution of the SL nerve root distribution, and pain at 70 degrees in straight leg raising of his right leg. Dr. J.K. Sommers (Sommers), a chiropractor, reported that Bilbie suffered from chronic, severe low and mid back pain with the following prognosis: "degenerative changes will tend to slowly progress." Dr. Melvin L. Edwards, Jr. submitted a report on August 15, 1983 in which he concluded that Bilbie's back and heart problems rendered him "disabled for his occupation" and that Bilbie "may require social security until he can resolve or recover his health or develop another occupation." Bilbie was admitted to the hospital for treatment of his back and leg conditions on November 11, 1983. He was diagnosed as having SL neuropathy due to lumbar stenosis and probable degenerative disc disease.
 
 
 8
 Bilbie filed for social security disability benefits on April 19, 1983 claiming that because of back pain, heart disease, diabetes, and hypertension, he became unable to work as of October 1, 1982. He was denied benefits, and Bilbie requested a hearing before an administrative law judge. At the hearing conducted before the ALJ, Bilbie attested to his medical problems and submitted the various doctors' reports as exhibits. He also testified that since he stopped working as a bricklayer, he assisted his wife with the housework, cared for goats and chickens, and walked half an hour three times a week. He drove daily and cut grass with a riding mower. He also regularly attended church, movies, and ballgames. Bilbie indicated that he could probably handle the job of a self-service gas station attendant, but opined that it would be better for him to walk rather than to remain stationary. He also testified that he could sit for about an hour, but wasn't sure how long he could stand or move about and that he could bend without pain, but had no trouble using his hands.
 
 
 9
 Don Harrison (Harrison), a vocational expert, testified that Bilbie's past work was semi-skilled, and that the manipulating skills Bilbie acquired as a bricklayer could be used in assembling or inspecting the assembly of small parts in either light or sedentary work. He also testified that 4000 such light jobs and 3000 such sedentary jobs existed in southeastern Michigan. Harrison further stated that if all of Bilbie's testimony were credited, he could do no work, but that he could perform the suggested assembly or inspection jobs if he could lift ten pounds frequently, twenty pounds occasionally, and did not have to bend.
 
 
 10
 The administrative law judge determined that Bilbie did indeed suffer from coronary artery disease, chronic lower back pain, hypertension, and diabetes. He therefore concluded that Bilbie's residual functional capacity was limited to sedentary work, but because his acquired skills as a bricklayer were transferable, Bilbie was not disabled. If the administrative law judge had determined that Bilbie's skills were not transferable, Bilbie would have been found to have been disabled under the applicable regulations. See 20 C.F.R. Part 404, Subpt. P, App. 2, Table 1.
 
 
 11
 Bilbie's requested review was denied by the Appeals Council, and the administrative law judge's decision became the final decision of the Secretary. He thereupon filed an action in the United States District Court for the Eastern District of Michigan seeking reversal of the Secretary's determination. The matter was referred to a magistrate who, on cross-motions for summary judgment, issued a report and recommendation that summary judgment be granted in favor of Bilbie because the administrative law judge's conclusion that Bilbie had acquired transferable skills was not supported by substantial evidence. Although no objections to the magistrate's report were filed, Judge DeMascio rejected the report and recommendations and granted the Secretary's motion for summary judgment.
 
 
 12
 The Secretary's findings in a social security case are conclusive if supported by substantial evidence. 42 U.S.C. Sec. 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The record must be viewed in its entirety when determining if substantial evidence exists to support the Secretary's findings. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). If supported by substantial evidence, the Secretary's determination must stand even if the reviewing court would have resolved disputed issues of fact differently. Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir.1983) (per curiam).
 
 
 13
 The Secretary's determination that Bilbie is capable of performing sedentary work is supported by substantial evidence. None of the doctors' reports suggested that Bilbie was totally disabled. Argueta concluded that Bilbie could continue to work if he avoided heavy physical exercise. Genovese determined that he could return to work if not required to lift over 50 pounds. Sommers, concluded that Bilbie's back condition improved with treatment. Edwards determined that Bilbie was disabled in that he could not perform his past work as a bricklayer, but suggested that he develop a new, less strenuous occupation. Although the administrative law judge did believe Bilbie's testimony that he suffered from severe impairments, his conclusion that Bilbie was nevertheless capable of sedentary work is supported by substantial evidence.
 
 
 14
 Bilbie argued, however, that the Secretary's conclusion that his job skills were transferable was not supported by substantial evidence. Bilbie asserted that "manipulative" skills and hand-eye coordination were not skills, but aptitudes which cannot be considered as transferable skills when making the disability determination. See 20 C.F.R. Sec. 404.1568. In Weaver v. Secretary of Health and Human Services, 722 F.2d 310 (6th Cir.1983), this court determined that
 
 
 15
 there is an inherent difference between "aptitudes" and "skills." An "aptitude" is an "inclination, a natural ability, talent, or capacity for learning." A "skill" is a "learned power for doing something competently." In short, an aptitude is an innate ability while a skill is a learned ability. While a person may have natural talents including dexterity, general coordination, space relations, etc., that same person may not have the particular learned ability to do a specific job. * * * We agree that the "presumption would be effectively negated if such basic aptitudes as ability to see, think and uses ones [sic] hands, common to most persons, are considered transferable skills."
 
 
 16
 Id. at 311-12 (quoting Blake v. Secretary of Health and Human Services, 528 F.Supp. 881 (E.D.Mich.1981) (some citations omitted). The court, therefore, concluded that "average intelligence, high average space relations, average form relations, above average finger dexterity, and manual dexterity in terms of the tools ... used" were not transferable skills. Id. at 311. See also Ellington v. Secretary of Health and Human Services, 738 F.2d 159, 161 (6th Cir.1984) ("independence of judgment" and "responsibility for a work product" are not transferable work skills); Richardson v. Secretary of Health and Human Services, 735 F.2d 962 (6th Cir.1984) (per curiam) ("ability to maintain a production standard and the ability to use hand tools" are aptitudes, not skills).
 
 
 17
 The Secretary's determination that Bilbie's skills are transferable is not supported by substantial evidence. The vocational expert testified only that "manipulating type of skills" involved in bricklaying were transferable. Hand-eye coordination and manual dexterity, however, are generally considered aptitudes, not skills. The administrative law judge did not develop the necessary testimony to determine what degree of his skills were "learned" rather than "innate," and what skills he had acquired as a bricklayer were transferable. The judgment of the district court is, therefore, REVERSED, and the case is REMANDED to the administrative law judge to further develop the testimony of the vocational expert to determine whether Bilbie did indeed possess transferable skills.
 
 
 18
 RYAN, Circuit Judge (dissenting).
 
 
 19
 I must respectfully dissent from the court's opinion for two reasons:
 
 
 20
 1) Given my colleagues' substantive decision to reverse the decision of the district court, it appears to me to be inappropriate to remand the case to the administrative law judge for the purpose of entertaining additional testimony; and, in any event,
 
 
 21
 2) In my judgment, there is substantial evidence in the record to support the conclusion of the administrative law judge and the district court that the plaintiff is not entitled to benefits.
 
 I.
 
 22
 Although I do not agree with my colleagues that the "Secretary's determination that Bilbie's skills are transferable is not supported by substantial evidence," given the binding effect of that determination, I do not agree that the case should be remanded for further testimony.
 
 
 23
 The court has determined that the record lacks sufficient evidence to support the decisions of the administrative law judge and the district court that the plaintiff's bricklaying skills are transferable to other work. The court also concedes that the plaintiff has otherwise established his entitlement to benefits. Therefore, the Secretary loses the case and the plaintiff should be awarded benefits.
 
 
 24
 I do not understand why the Secretary should be afforded a second opportunity "to further develop the testimony of the vocational expert to determine whether Bilbie did indeed possess transferable skills." (Emphasis added.) The court has already determined that the vocational expert's testimony does not demonstrate that Bilbie has such skills. The rhetorical question that suggests itself is: "How many times must the plaintiff win?"
 
 II.
 
 25
 More significantly, I do not agree that the record does not contain substantial evidence that the plaintiff's skills are transferable.
 
 
 26
 Plaintiff is a journeyman bricklayer. The vocational expert testified that the plaintiff's skills are learned or acquired. He further testified that they are manipulating-type skills which include eye/hand coordination and manual dexterity of the kind that are transferable to jobs of a lower exertional level such as small parts assembler and small parts inspector. The plaintiff's skills developed as a bricklayer include joining, assembling, and aligning. These are not mere aptitudes. Certainly, such skills are rendered easier to acquire and perfect because of the innate abilities of eye/hand coordination and manual dexterity, but there is an important conceptual difference between the innate abilities whose use, refinement, and enhancement result in special skills, and the skills themselves. The vocational expert's testimony makes the distinction clear:
 
 
 27
 "[A]ligning [etc.] ... [are] primarily skills where eye/hand coordination [and] manual dexterity would be required."
 
 
 28
 Eye/hand coordination and manual dexterity are innate abilities which enabled Bilbie to acquire his work skills; but, the skills that are transferable are joining, assembling and aligning. These skills will enable Bilbie to perform other jobs.
 
 
 29
 Because the Secretary's finding is supported by substantial evidence, the district court's decision affirming the denial of benefits should be affirmed.