815 F.2d 78
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linda D. LEE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 NO. 86-5393.
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1987.
 
 Before LIVELY, Chief Judge; WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Linda D. Lee appeals from the decision of the district court affirming the decision of the Secretary of Health and Human Services which denied appellant's claim for disability benefits
 
 I.
 
 2
 Appellant Lee filed an application for disability insurance benefits on September 16, 1982 On May 5, 1983, the application for benefits was denied after a hearing by an Administrative Law Judge (ALJ) because he opined that the appellant could perform her past relevant work which was a licensed practical nurse. On August 31, 1983, the Appeals Council denied review, thus making the ALJ's decision the final decision of the Secretary Appellant subsequently filed the instant action pursuant to 42 U.S.C. Sec. 405(g). seeking judicial review of the Secretary's final decision On March 11, 1986, the district court affirmed the Secretary's decision. Claimant then filed this timely appeal.
 
 
 3
 Appellant was born on March 15, 1948, making her 35 years of age on the date of hearing. She has completed 24 hours of college and has past relevant work experience as a licensed practical nurse, sewing operator, waitress and social worker.
 
 
 4
 Appellant alleges she became disabled on March 18, 1982. She claims that her main symptom is severe pain behind her ears which radiates into the side of her head. She also stated that her mouth draws up, her right eye droops and she has weakness in her right side.
 
 
 5
 Appellant stated that she has not driven an automobile in three months because riding in a car causes her head pain. She claims to perform no household chores with the majority of her time spent watching television, lying down, and supervising housework. She only goes shopping once a month
 
 
 6
 The following is a summary of the medical evidence that was presented at the administrative hearing. The appellant began her medical treatment at Lake Cumberland Medical Center on March 25, 1982. Appellant complained of headaches and right facial pain. She had a normal skull and sinus series. The CT head scan and x-rays of the mandible were completely within normal limits. Appellant's symptoms gradually improved over this two week period with the final diagnosis being stated as either vascular headaches or trigeminal neuritis.
 
 
 7
 Dr. Jasper,who was the treating physician at the hospital,continued to treat the appellant on an out-patient basis. On September 22, 1982, Candy Anglin, a disability examiner, contacted Dr. Jasper by telephone Dr. Jasper stated that appellant was first seen for what was thought to be ticdulane. However, he noted that she was later examined by a neurologist and was diagnosed as having inflammation of the petrous bone on the right side which caused chronic facial weakness on the right side. Dr. Jasper felt that appellant was getting better and her prognosis was good but she would require long term treatment. He also stated that the duration of her illness is unknown. Appellant was diagnosed as having some depression but no psychosis, and there was no evidence of memory loss. On March 14, 1983, Dr. Jasper subsequently wrote a letter stating that appellant had trigeminal neuralgia. He opined that appellant still had significant disability due to pain and discomfort from this medical problem. In addition, he stated it was his opinion that appellant's medical problem had made her totally disabled from gainful employment.
 
 
 8
 Dr. Jasper referred the appellant to Dr. Reed. a neurologist. Dr. Reed first examined the appellant on September 3, 1982. His report noted the claimant's symptoms and the physician's diagnosis, but not his clinical findings. Dr. Reed diagnosed right petrositis with involvement of the fifth and sixth cranial nerves that was probably related to an inflammatory process. Dr Reed subsequently examined appellant on February 17, 1983. Dr. Reed's report based on that examination revealed "decreased corneal response on the right, and an altered sensation to pin over the right trigeminal distribution." Appellant did not have double vision and her speech was normal Dr. Reed opined that the etiology of the right trigeminal lesion was not clear and thought there should be further testing done.
 
 
 9
 On February 23, 1983, appellant was discharged from Good Samaritan Hospital and Dr. Reed issued a report summarizing appellant's hospitalization. Dr. Reed reported that appellant had a protein of 66/mg and five lymphocytes. Dr. Reed thought that appellant could have trigeminal neuralgia, but he opined it could also be demyelination The physician also stated: "I feel that it is important to maintain an open mind regarding the diagnosis since there are physical findings as well as incapacitating pain to account for the patient's symptomatology."
 
 
 10
 Dr. Reed's report of March 24, 1983, revealed that appellant was still having pain "in the right retroauricular region with facial numbness." Appellant had a decreased response to pin and touch over the right face and decreased corneal response on the right. Dr. Reed still was not certain if appellant had trigeminal neuralgia because the only abnormality was the 66/mg percent protein which was slightly elevated on the spinal fluid examination.
 
 
 11
 In addition to the medical evidence presented at the hearing, there was a letter written by the administrator of the Midtown nursing home where appellant worked as a "charge nurse." The letter, dated November 1, 1982, states that appellant worked at the nursing home from October 4, 1980, to March 22, 1982. The letter also stated:
 
 
 12
 After Linda's illness began she went from always being on duty when scheduled to having to miss frequently.
 
 
 13
 She appears to have the following problems that make it impossible for her to resume her duties as Charge Nurse:
 
 Memory loss
 Tires easily
 Appears unable to cope with stress
 Appears depressed at times
 
 14
 I have enclosed a copy of Linda's job description. In referring to this job description you can see why Linda cannot resume her duties at this time.
 
 
 15
 In light of the evidence adduced to at the administrative hearing, the ALJ determined that the appellant has severe trigeminal neuralgia but does not have an impairment listed or a combination of impairments listed in, or medically equal to a listed impairment found in 20 C.F.R. Sec. 404, Subpart P. App. 1 Although this condition resulted in some functional limitations, the ALJ opined that the evidence did not demonstrate that it was of such a severity so as to stop appellant from performing her past work. In addition, the ALJ found that appellant's allegation, of severe pain were not credible. Therefore, the ALJ found that the appellant was not under a disability.
 
 II.
 
 16
 The only issue involved on appeal is whether there is substantial evidence to support the Secretary's decision to deny the claimant disability benefits. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." It is more than a scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). The scope of judicial review is limited to determining whether the findings of fact made by the Secretary are supported by substantial evidence, and deciding whether the Secretary employed the proper legal criteria in reaching those findings. Gibson v. Secretary of Health, Education & Welfare, 678 F.2d 653 (6th Cir. 1982). Thus, the court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.
 
 
 17
 Appellant argues that she should be awarded disability benefits because her alleged condition of trigeminal neuralgia and accompanying irremediable pain preclude her from performing any type of gainful employment Appellant claims that her condition is supported by her testimony and the testimony of her husband and two physicians Appellant states that the ALJ disregarded both of the treating physicians reports and based his decision solely on his observation of appellant.
 
 
 18
 It is the court's opinion that the ALJ was in error when he decided that the appellant was not disabled because she was able to perform her former job as a licensed practical nurse. Although the ALJ did consider the medical evidence as well as the other evidence, we conclude that his decision is not supported by substantial evidence. Dr Jasper stated in a letter that appellant has trigeminal neuralgia and as a result has a significant disability due to pain and discomfort. Dr. Jasper proceeded to state that it was his opinion that appellant was unable to work because of her medical problem.
 
 
 19
 Although Dr. Reed was not certain that appellant had trigeminal neuralgia he stated that appellantwas still having severe pain in the right retroauricular region with facial numbness Dr Reed also reported that there were physical findings as well as incapacitating pain to account for the patient's symptomatology In addition, the nursing home administrator stated that after reviewing the job requirements for appellant's past job as a charge nurse, it could be seen that appellant could not perform the job. Lastly, appellant's testimony reveals that the most strenuous activity she performs is to go shopping once a month, with her usual day consisting of lying down because of her pain.
 
 
 20
 The ALJ in his decision stated that although appellant's condition results in some functional limitations it is not of such a severity that she would not be able to return to her past work. The ALJ also stated that appellant did not show signs at the hearing of a person who was in such pain that she could not do the work of a licensed practical nurse. We believe that this is not substantial evidence. Although we recognize that subjective complaints of pain will not overcome medical evidence to the contrary, Halsey v. Richardson, 441 F 2d 1230, 1236 (6th Cir. 1971), there was no such contrary medical evidence in the instant case. Furthermore, while an ALJ may examine the credibility of complaints of pain, Kirk v. Secretary of HHS, 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983), and while an ALJ's personal observations are relevant, the dismissal of a disability claim must not rest "solely on the ALJ's observations at the hearing." Weaver v. Secretary of HHS, 722 F.2d 310, 312 (6th Cir. 1983). This is tantamount to the "thoroughly discredited 'sit and squirm' test." Id.
 
 
 21
 It is our opinion that appellant cannot perform her former job as a licensed practical nurse. However, this does not necessarily mean the appellant is disabled. The question of whether a claimant can perform past relevant work is only the fourth inquiry in the five-step sequence provided by the regulations. See Kirk, 667 F.2d at 528. If the claimant is able to perform past work, then the claimant is deemed not disabled and the inquiry is at an end: if, however, the claimant is unable to perform past work, then it must be determined under the fifth step whether the claimant can perform other substantial gainful activity in the national economy. This is what has not yet been determined in the instant case We therefore believe there needs to be additional medical evidence adduced and either an analysis under the medical-vocational guidelines or. if needed, the testimony of a vocational expert to determine whether there are other jobs in the national economy that appellant can perform
 
 
 22
 Having found that there is not substantial evidence to support the Secretary's decision that appellant is capable of performing her past work, we accordingly REMAND this case to the district court with instructions to remand to the Secretary for further consideration consistent with this opinion.[1]
 
 
 
 [1]
 In determining appellant's ability to perform other relevant work under the grid, the Secretary should consider appellant's complaints of disabling pain under this court § decision in Duncan v. Secretary of Health and Human Services, 801 F.2d 853 (6th Cir 1986)