843 F.2d 1392
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sylvester SUROWKA, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1368.
 United States Court of Appeals, Sixth Circuit.
 March 24, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr., and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff-appellant, Sylvester Surowka, appeals from the district court's decision affirming the Appeals Council's denial of Surowka's application for disability benefits. The sole issue is whether the determination that Surowka had the residual functional capacity to perform his past relevant work as a bench hand was supported by substantial evidence. Because we conclude that the Secretary's determination was supported by substantial evidence, we affirm.
 
 I.
 
 2
 Surowka was born on June 6, 1924, and has completed the ninth grade. At the time of the hearing before the administrative law judge (ALJ) he was 61 years old. He had been employed by Wolverine Bolt as a machine repairman and later as a bench hand from 1950 until September 28, 1984, the alleged date of his disability.
 
 
 3
 The ALJ summarized Surowka's testimony at the hearing as follows:
 
 
 4
 The claimant testified that he stopped working after experiencing dizzy spells on the job while bending over. He had a heart attack in 1976, and experiences sharp pain across the chest radiating to the left shoulder when he walks. Such pain is relieved by nitroglycerin within fifteen to sixty minutes. He visits Dr. Lahiri at two month intervals and undergoes a treadmill test annually. The claimant complained of dizzy spells occurring three times a week and lasting for periods of 30 minutes each. He alleged having difficulty bending and twisting, but has not had any treatment for his back since 1981. He has shortness of breath with exertion and nausea when bending fast or getting up quickly. He stopped smoking in 1976. The claimant indicated that he is able to sit for one hour before experiencing cramps in the arms and legs, stand for one hour before experiencing back and leg pain, climb stairs very slowly, walk without an assistive device, bend to the knees, and lift 30 pounds. His activities include cooking, shopping, driving, visiting with relatives, and occasional cleaning.
 
 
 5
 In November of 1980, Surowka was seen by Dr. Jane Perrin for his complaints of back pain. He was seen again by her in March of 1981 with respect to his complaints of back and neck pain. These visits were summarized by the ALJ as follows:
 
 
 6
 Dr. Jane Perrin examined the claimant in November, 1980, at which time he complained of low back pain. The claimant demonstrated 75 percent of normal lumbosacral flexion with L5-S1 and left sacroiliac tenderness. His gait was normal and straight leg raising was negative. Dr. Perrin diagnosed chronic lumbosacral strain and left sacroiliac synovitis and, at her recommendation, the claimant underwent a one month course of physical therapy. The claimant returned in March, 1981, complaining of low back and neck pain. Upon examination, he demonstrated full range of motion of the cervical spine and no weakness in either upper extremity. Straight leg raising was negative and there were no neurological findings in either lower extremity. Dr. Perrin diagnosed degenerative joint disease with cervical myofascial syndrome and bilateral sacroliac synovitis, advised the claimant of the importance of a home exercise program, and encouraged him to get involved in a sporting activity.
 
 
 7
 Surowka was given a stress test on October 25, 1982. He exercised for 7.1 minutes before the test was stopped due to his fatigue. The examiner found no clinical evidence of myocardial ischemia and noted that Surowka's blood pressure was normal. It was, however, noted that Surowka's physical work capacity was "decreased due to fatigue."
 
 
 8
 In May of 1985, Surowka was seen by Dr. Dahlstedt. The ALJ summarized the doctor's report with respect to that visit as follows:
 
 
 9
 Dr. Dennis Dahlstedt evaluated the claimant in May, 1985, at which time he ambulated with a mild right-sided limp, without an assistive device. His blood pressure was 110/70, and funduscopic examination was within normal limits. The claimant's breath sounds were mildly decreased, with no rales, rhonchi, wheezing, use of accessory muscles, clubbing, or cyanosis. Musculoskeletal and extremity examinations were within normal limits, except for some decrease in the range of motion of the cervical and lumbar spine. There was no evidence of nerve root irritation or neurological deficit. Pulmonary function studies did not show any significant abnormality. An EKG was compatible with old anterioseptal infarction. Dr. Dahlstedt diagnosed shortness of breath, chest pain, and cervical lumbosacral strain.
 
 
 10
 The record also includes a May 1985 report from Dr. Lahiri, a cardiologist whom Surowka testified that he sees about every two months. In the report, Dr. Lahiri stated that Surowka experienced shortness of breath, hypotension, and V Tach upon exertion.
 
 
 11
 Another stress test was given to Surowka in May of 1985. He exercised for 9.2 minutes before the test was stopped due to evidence of wide QRS Tach. The examiner, Dr. Lahiri, stated that there was evidence of mycardial ischemia and dizziness with Tach with hypotension transient. Also, Dr. Lahiri found that Surowka's physical work capacity was limited due to dizziness and wide QRS Tach.
 
 
 12
 Surowka was next seen by Dr. Parker at the Secretary's request in August of 1985. The ALJ accurately summarized Dr. Parker's medical report as follows:
 
 
 13
 Dr. Jeffery Parker examined the claimant in July, 1985. The claimant's blood pressure was 130/80. Breath sounds were decreased bilaterally. There was no limitation of movement of the neck or back and no tenderness or paravertebral muscle spasm, and X-rays of the lumbosacral spine were within normal limits, with no gross arthritic changes. An EKG was consistent with old anterior wall myocardial infarction. Dr. Parker diagnosed hypertension, status post myocardial infarction, coronary artery disease associated with angina pectoris, chronic lumbosacral strain condition, and old anterior right leg traumatic arthritic condition.
 
 
 14
 In Dr. Parker's report, he also states that Surowka left work on September 20, 1984, because he was laid off after the Wolverine Bolt plant was sold. Dr. Parker's report also describes Surowka's job: "His position was that of a tooler which gave the machine new tools, repaired tools, he did a lot of bending, reaching, pushing, stooping, and pulling on this particular job." Based on this job description, Dr. Parker concluded:
 
 
 15
 Because of the patient's multiple medical problems, primarily his heart, I would not allow him to return to the job he described to me. I would completely disable him from that work. I feel the patient's job contributed to underlying problems of coronary artery disease, angina pectoris, and myocardial infarction. In addition, the patient's job contributed to underlying condition, but did not cause hypertension. The patient's job aggravated condition of chronic lumbosacral strain and caused and re-aggravated condition of anterior tibial right leg pain with a traumatic arthritis in that particular area.
 
 
 16
 A vocational expert, Dr. Fotiu, also testified at the hearing.
 
 
 17
 Dr. Peter Fotiu was present at the hearing and testified as a vocational expert. Dr. Fotiu classified the claimant's past relevant work by skill and exertional level. The claimant's job as a bench hand was semi-skilled, medium work, and his job as a machine repairman was semi-skilled, very heavy work. As a consequence of his past work, the claimant acquired a variety of vocational skills including the knowledge of machinery to repair defects, the use of measuring instruments, the ability to operate and adjust the machinery he repaired, the ability to verify dimensions and alignment, some blueprint reading, hand tool usage, and the ability to assemble cutting tools and fixtures for production type work.
 
 
 18
 Additionally, the ALJ asked Dr. Fotiu the following hypothetical question:
 
 
 19
 Consider his age, 61 years of age, his education as a limited education. His past work, of course a bench hand, past work was a medium and semi-skilled work, machine repair work, which is semi-skilled heavy work. The transferrable (sic) skills to other jobs. Consider his impairments, his diagnosis as chronic lumbar strain and examination of flexis (inaudible) 70 degrees, extremely show no weakness in either upper extremities. SOR was negative.
 
 
 20
 No--no neurological deficit in the lower extremities. No aide for walking. No (inaudible) function in (inaudible) found. Takes medication for hypertension. No evidence of (inaudible) damage to the stedespose (phonetic), myocardial infarct in 1976, was demonstrated by the EKG finding. A report from his treating physician, Exhibit 19, dated 6-9-85, does not indicate there is any eschemic changes. He states there was no congestive heart failure. His blood pressure at that time was 120 over 80. He states that the treadmill test shows some tracial ticardia (phonetic) after 9 minutes of exercise.
 
 
 21
 Assume he could lift 25 pounds frequently, occasionally 50. Sit, stand, sit for 8 hours. He walks without any assistant devices. Upon examination by the consultive expert, he states the claimant give a history of chest pain compatible with angina once a month. There's little evidence of synchope. This report indicates that chest pain is relieved 1 minutes after taking Nitroglycerin, 5 minutes with rest. On the basis of those factors, could he return to any of his past work?
 
 
 22
 In response, Dr. Fotiu indicated the Surowka would be able to perform his past job as a bench hand. Also, Dr. Fotiu described other available "medium," "light," and "sedentary" work which Surowka would be able to perform.
 
 
 23
 Then the ALJ asked Dr. Fotiu to assume that the claimant's testimony was credible and to respond to the above questions based on Surowka's testimony alone regardless of the medical testimony. In response, Dr. Fotiu stated that if that were the situation, Surowka would not be capable of performing any of the described jobs. The ALJ then sought a more clearly defined answer by asking: "Which factor would preclude from work if found credible?" Dr. Fotiu responded:
 
 
 24
 [He] indicated that it--he was unable to keep up with the pace of the work with the pressures and the job he couldn't handle, primarily because of factors such as dizziness, which occur 3 times a week and last about 30 minutes, and the chest pain, those would be the--there's also some breathing problems and exertion and nausea when he bends over and I think those are the factors that would suggest from this testimony that he would be unable to perform any type of work.
 
 
 25
 The ALJ described his own observations of the claimant during the 55-minute hearing,
 
 
 26
 The claimant looked well, demonstrated good extremity usage with no physical abnormality, remained seated, and ambulated without an assistive device. He was alert, his concentration, memory, and responsiveness were good, and he did not appear to be in any pain or discomfort.
 
 
 27
 Surowka applied for disability insurance benefits due to heart disease and back pain on April 11, 1985. His application was denied initially and upon reconsideration. A formal hearing was held before the ALJ who also denied Surowka's application. The Appeals Council modified the ALJ's decision and adopted it as the Secretary's final decision. Surowka sought judicial review in the district court which referred the case to a magistrate. The magistrate's report and recommendation that the Secretary's decision to deny benefits was supported by substantial evidence was adopted by the district court.
 
 II.
 
 28
 On review, this court's role is to determine whether the Appeals Council's decision (here the ALJ's decision as modified) is supported by substantial evidence on the record as a whole. Mullen v. Bowen, 800 F.2d 535, 545-46 (6th Cir.1986) (en banc). The Appeals Council adopted the ALJ's determination, with one modification, as its own. The ALJ's findings with the modification are as follows:
 
 
 29
 1. The claimant met the disability insured status requirements of the Act on September 28, 1984, the date the claimant stated he became unable to work, and continues to meet them at least through the date of this decision.
 
 
 30
 2. The claimant has not engaged in substantial gainful activity since September 28, 1984.
 
 
 31
 3. The medical evidence establishes that the claimant has chronic lumbosacral strain, hypertension, and status postmyocardial infarction, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
 
 
 32
 4. The claimant's subjective symptomatology is not substantiated by objective medical evidence.
 
 
 33
 5. The claimant has the residual functional capacity to perform work-related activities except for work involving lifting [over] 50 pounds (20 CFR 404.1545).
 
 
 34
 6. The claimant's past relevant work as a bench hand did not require the performance of work-related activities precluded by the above limitation(s) (20 CFR 404.1565).
 
 
 35
 7. The claimant's impairments do not prevent the claimant from performing his past relevant work.
 
 
 36
 8. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1530(3)).
 
 
 37
 The steps for evaluating a disability claim are set forth in 20 C.F.R. Sec. 404.1520. The relevant steps were aptly summarized in Kirk v. Secretary of Health & Human Services, 667 F.2d 524 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983).
 
 
 38
 The regulations require that an initial determination be made as to whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is found "not disabled." Second, it is determined if the claimant has a severe impairment--one that significantly limits the ability to perform work-related functions; if not, then on the medical evidence alone the claimant is determined to be not disabled. Third, if a severe impairment is found, the impairment is compared against those listed in Appendix 1, 20 C.F.R. Subpart P, Appendix 1 (1981), to see if, on the medical evidence alone, the claimant can be found to be disabled. Assuming the claimant is not found to be disabled, the fourth step requires inquiry into whether the claimant can perform relevant past work; if so, then the claimant is not disabled.
 
 
 39
 Id. at 528.
 
 
 40
 Surowka concedes that the Secretary properly determined that the medical evidence did not indicate that Surowka suffered from one of the severe medical impairments listed in Appendix 1. Therefore, it is undisputed that the focus of this case is the Secretary's determination that the claimant was not disabled at the fourth step because he had the residual functional capacity to perform his past relevant work as a bench hand.
 
 
 41
 Residual functional capacity is used to determine whether an individual is capable of doing past relevant work and, if not, any other types of work.[1] Sec. 404.1561. Section 404.1545(a) states that "residual functional capacity is what you can still do despite your limitations" and "is a medical assessment." However, it may include the descriptions, including the claimant's, of limitations "that go beyond the symptoms that are important in the diagnosis and treatment of [the claimant's] medical condition." Id. Additionally, Sec. 404.1545(b) states:
 
 
 42
 When we assess your physical abilities (e.g. strength) we assess the severity of your impairment(s) and determine your residual functional capacity for work activity on a regular and continuing basis. We consider your ability to do physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching, handling and the evaluation of other physical functions. A limited ability to do these things may reduce your ability to do work.
 
 
 43
 Lastly, Sec. 404.1545(d) states that factors which do not limit physical exertion such as postural and manipulative limitations, and environmental restrictions, will be considered in addition to impairments affecting physical exertion in determining residual functional capacity.
 
 III.
 
 44
 Surowka's specific contention on this appeal is that the ALJ's determination that he had the residual functional capacity to perform his past relevant work as a bench hand in spite of his non-exertional limitations, is not supported by substantial evidence. Specifically, Surowka asserts that the following non-exertional limitations prevent him from performing his past relevant work--dizziness, shortness of breath with exertion, chest pain, difficulties bending and twisting, inability to sit or stand for longer than one hour without experiencing leg or arm cramps, and back and neck pain. These factors fall within the definition of "symptoms," i.e., the claimant's "own description" of his physical or mental impairment. 20 C.F.R. Sec. 404.1528(a). The weight given to "symptoms" is clearly spelled out in the Secretary's regulations:
 
 
 45
 If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.
 
 
 46
 20 C.F.R. Sec. 404.1529.
 
 
 47
 Additionally, a federal statutory provision specifically dealing with symptoms and allegations of pain is to be applied to determinations made prior to January 1, 1987, as the one in this case was. 42 U.S.C. Sec. 423(d)(5)(A). That statute provides:
 
 
 48
 An individual shall not be considered to be under a disability unless he funishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.
 
 
 49
 The following analytical steps must be used to evaluate Surowka's subjective complaints of symptoms, including pain:
 
 
 50
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, then we examine: (1) whether objective medical evidence confirms the severity of the alleged [symptoms] arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling [symptoms].
 
 
 51
 Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 852 (6th Cir.1986).
 
 
 52
 It is clear that there is objective medical evidence of an underlying medical condition satisfying the first prong of Duncan. However, there is substantial evidence supporting the Secretary's determination that the second prong of Duncan was not met. There is very little medical evidence of alleged pain. There is clearly substantial evidence to indicate that his back and neck pain are not disabling. Surowka admits that he has not sought treatment for these problems since 1981. Even when he saw Dr. Perrin in 1981, her report did not indicate that his pain was disabling at all. Although there is evidence of a condition reasonably expected to produce the chest pain, there is no indication that the pain is disabling. The claimant's own testimony with respect to frequency of the pain and the use of nitroglycerin to alleviate the pain within 1 to 60 minutes, supports this determination. Additionally, Surowka's claim that he cannot sit or stand for over one hour without experiencing leg or arm cramps is simply not supported by any objective medical evidence or condition.
 
 
 53
 Lastly, Surowka's claims of dizziness and shortness of breath upon exertion must be addressed. These two symptoms are supported by objective medical evidence--specifically, Dr. Lahiri's report and evaluation of Surowka's performance on the stress test. There was clearly evidence of an underlying medical condition which would produce these symptoms upon exertion--low blood pressure and excessively rapid heart rate. However, we find that the Secretary's decision was supported by substantial evidence because there was no evidence that the shortness of breath or dizziness were so severe as to prevent Surowka from performing his past relevant work as a bench hand.
 
 
 54
 Lastly, we note that the claimant's argument that the ALJ's use of his own observations of the claimant at the hearing amounted to an impermissible use of the sit-and-squirm test, is meritless. Specifically, it is impermissible for the ALJ to discount claimant's complaints of pain soley based upon his observation of the claimant at the hearing. Weaver v. Secretary of Health & Human Services, 722 F.2d 310, 312 (6th Cir.1983). That is not what occurred in this case.
 
 IV.
 
 55
 For the above reasons we AFFIRM the district court's decision to uphold the Secretary's determination that Surowka was not disabled because he could perform his past relevant work as a bench hand.
 
 
 
 [1]
 In determining the exertional requirements of work in the national economy, jobs are classified as "sedentary," "light," "medium," "heavy," and "very heavy." 20 C.F.R. Sec. 404.1567. To assess the skill level reflected by an individual's past work experience and to determine work existing in the national economy which the individual is competent to do, occupations are classified as unskilled, semi-skilled, and skilled. Sec. 404.1568. The claimant does not dispute the characterization of his past work as a bench hand as "semi-skilled," "medium" work. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. Sec. 404.1567(c)